## COSSACK v. UNITED STATES.*
### No. 7732.

Circuit Court of Appeals, Ninth Circuit.
March 2, 1936.

Loeb L. Cossack, of Los Angeles, Cal., in pro. per.

Peirson M. Hall, U. S. Atty., and M. G. Gallaher and Joseph J. Irwin, Asst. U. S. Attys., all of Los Angeles, Cal.

Before WILBUR, GARRECHT, and HANEY, Circuit Judges.

GARRECHT, Circuit Judge.

Appellant, Cossack, was indicted with his codefendants, Betty Lang, Fenton, Pollack, and Carlson, alias West. There were two indictments, one involving the robbery of the branch of the California Bank at Forty-Sixth street and Western avenue, Los Angeles, Cal., and taking therefrom $4,300. The other indictment was for holding up the Wilshire & Hauser Branch of the Citizens National Trust & Savings Bank of Los Angeles, and the taking of the sum of $1,523. The cases were consolidated for trial. Originally each indictment was in three counts, but, before the submission of the case to the jury, the second count in each indictment was eliminated. The defendants contended that the first and third count in each indictment charged the same offense in different form. The court instructed the jury that it should find the defendant guilty of only one of these two counts as to each indictment. The jury returned a verdict of guilty as to the first count of each indictment. By this count in each case the defendants were charged with having committed the of-

*Certiorari denied 56 S. Ct. 678, 80 L. Ed. ——.

fense of bank robbery, as defined by 12 U.S.C.A. § 588b (a). Upon the verdict of the jury the District Court pronounced sentence against appellant, Cossack, from which he has appealed to this court.

■ The evidence discloses that in the method of operation pursued in the case of these robberies defendants Fenton and Carlson would do the actual holdup work; that generally before determining when the robbery was to take place some one would "case the job," which meant a study of the situation in advance as to how many employees there were in the bank, the interior arrangements, the height and situation of counters, and the location of money cages. At times a certain plat of the interior was made, which was gone over in advance of the raid by Carlson and Fenton. In planning the get-away, there would generally be used three or more automobiles, which were located at convenient places, so that Carlson and Fenton in fleeing from the bank would be able to separate and carry on in different cars from the one actually used in the holdup. Some of these automobiles would be rented for the purpose. The testimony shows that appellant did the "casing" for at least one of the jobs involved in one of the indictments; that he also participated in the hiring of cars to assist his robber associates in getting away from the banks; that on one occasion when the loot was divided he was present and, at least once, received the actual money; that at another time Fenton, who formerly was employed about his office, brought the stolen money to the appellant's office, and it was placed into the safe there, and that jointly they used the money for living and other expenses. Appellant admits that he knew his associates were engaged in bank robberies. While he contends that he never had knowledge in advance what particular robbery was to be committed, he admits that after their commission his associates would come to his office and tell him about them. He admits that he received some of the stolen money, which he believed had been stolen when he accepted it, but he contends that the money was received as fees for which he was to render services as attorney, in the event that his associates became involved with the law by reason of these robberies.

When first arraigned, all defendants entered pleas of not guilty. Later, on December 10, 1934, the day before the trial, defendant E. I. Fenton withdrew his plea of not guilty, and by consent of court entered a plea of guilty as to count 1 of each indictment. On the day of the trial the United States district attorney moved that the case as against defendant Joseph Pollack be continued, which motion was granted. Appellant, at the close of the government's case, made a motion for a directed verdict upon the ground that the evidence was insufficient to support a conviction. The motion was denied, and appellant failed to renew this motion at the close of all the evidence. Appellant claims that he was unaware that it was necessary or required to renew this motion at the close of all the evidence to preserve any claim of error as to the sufficiency of the evidence. He insists that there was no substantial evidence of his guilt, and cites the case of Wiborg v. United States, 163 U.S. 632, 16 S.Ct. 1127, 1137, 1197, 41 L. Ed. 289, where the court, among other things, referring to a failure to request that the jury be instructed to find for the defendants, said: "Although this question was not properly raised, yet if a plain error was committed in a matter so absolutely vital to defendants, we feel ourselves at liberty to correct it." Had the motion been made and denied at the close of the case, we could have found no error in the ruling of the court. A careful reading of the record convinces us that there was ample pertinent evidence to support the verdict, and, although much of it was given by the appellant's associates in crime, it was all submitted to the jury under correct instructions of the court.

In Vilson v. United States (C.C.A.9) 61 F.(2d) 901, Judge Neterer, speaking for this court, said:

"In consideration of the evidence on a motion for a directed verdict, the evidence must be considered in its most favorable aspect to the appellee. [Citing cases.] If there is substantial evidence it must be submitted to the jury, whose function it is to consider and weigh it, and this includes credibility of witnesses. [Citing cases.]

"The record not only shows there is substantial evidence to sustain the charges, but tended to show that defendant aided and abetted others in the offenses on which defendant is convicted, and that defendant engaged with others in a common conspiracy to do such acts and in either case each of the parties so engaged is guilty of the offenses in issue. [Citing cases.]"

See, also, Abrams v. United States, 250 U.S. 616, at page 619, 40 S.Ct. 17, 63 L.Ed. 1173; Pierce v. United States, 252 U.S. 239, 251, 40 S.Ct. 205, 64 L.Ed. 542; Crono v. United States (C.C.A.9) 59 F.(2d) 339, 340; Maugeri v. United States, 80 F.(2d) 199, decided by this court November 21, 1935.

■ In the record appellant assigned 96 errors, some of which were abandoned; the remaining being discussed in the brief under 76 specifications of error. It is impractical, and would serve no purpose, to discuss these separately. · A large number of assignments of error were to the admission of the testimony of appellant's co-defendants. It is admitted by appellant Cossack that Fenton, one of the codefendants, had for a considerable period worked with him out of his office as an investigator. It is also in evidence that, when codefendant Carlson, alias West, presented himself at the office and told what his business was, appellant directed Fenton to have a talk with him. Growing out of this conversation, Fenton and Carlson engaged in a series of robberies, from the proceeds of some of which Cossack received a part. The appellant likewise had conversations with Lukow and Pollack of such substance and extent as to make the conversations and actions of these parties in connection with the bank robberies admissible in evidence against Cossack, and the court committed no error in the admission of such testimony. ᐧ

■ When it is established that persons are associated together to accomplish a crime or series of crimes, then the admissions and declarations of one of such confederates concerning the common enterprise while the same is in progress are binding on the others. It is not the name by which such a combination is known that matters, but whether such persons are working together to accomplish a common result. " * * * The legal principle governing in cases where several are connected in an unlawful enterprise is that every act or declaration of one of those concerned in the furtherance of the original enterprise and with reference to the common object is, in contemplation of law, the act or declaration of all. * * *" 16 C.J. § 1283, p. 646.

■ The common object of persons associated for illegal purposes forms part of the res gestæ, and acts done with reference to such object are admissible, though no con-spiracy is charged. Vilson v. U. S., supra; Sprinkle v. U. S. (C.C.A.) 141 F. 811.

■ Appellant claims error in the admission of testimony relative to other holdups occurring a short time prior to those involved in the indictment. Cossack's contention was that he was merely acting as attorney for the other defendants and that the money he received from the robberies was purely attorney's fees, and that he had no other connection with them. The testimony objected to and admitted tended to disprove this claim of appellant, and to show that his intent and purpose was to take part in these schemes of robbery. Appellant admitted he received portions of the stolen money, supposing it to have been stolen, but justified under the plea of payment of attorney's services, to be earned in the event that the bank robberies resulted in trouble for the defendants. This testimony was permissible as tending to prove that the appellant was not acting as an attorney, but as an accomplice in crime.

■ It appears that during the trial some contention arose as to the circumstances under which defendant Fenton had pleaded guilty. The trial judge, upon his own initiative, stated that he desired that the court reporter read in detail his notes of what occurred. No objection was interposed until after the reporter had concluded the reading of his notes, when the attorney for one of the codefendants of appellant objected to the testimony, in which appellant stated he desired to join. Here was an objection interposed after the testimony was in. Obviously, this was not the proper procedure. Appellant seems to have realized the situation, and immediately interposed a motion "that the testimony be entirely stricken and the jury instructed to disregard it," which motion was granted by the court, and the jury was so instructed. It is contended in relation to this ruling that it was not made. plain and certain to the jury as to what testimony was withdrawn from consideration. From a reading of the record, we do not see how any juror could be misled as to the testimony stricken. Further, as to this happening, no error was assigned, no exception taken to the action of the court, no misconduct claimed, and no harm shown.

There were 19 assignments of error wherein it is claimed that appellant was denied the opportunity of proper cross-examination. These assignments of error are made the basis of an unwarranted attack

upon the trial judge. In the course of his tirade in the brief, appellant charged the judge with unfairness and bias, while at the same time admitting that the record fails to disclose this. On the contrary, the record presented to this court indicates that the trial judge was eminently fair and, instead of attempting to hamper the appellant, at times tried to assist him with helpful suggestions. Appellant insists that he was prevented from sufficiently exploring the character and occupation of these self-confessed robbers, for the purpose of affecting their credibility. In his own brief appellant recites as a fact that these witnesses "admitted that they had taken part in four separate bank robberies and one drug store robbery; that they had entered these places with guns, with which they threatened their helpless victims." His grievance in this regard is particularly emphasized as to the witness Fenton, but in his brief he points out that the evidence shows "this witness to be a potential murderer, willing to commit the most heinous crime known to mankind." Indeed, this witness was a man of bad character, but the fact remains that he was associated with appellant in his own office; that they lived together, slept together, and joint expenses were defrayed from the money received from these robberies. The jury had all this evidence discrediting appellant's associates in crime before them, and it is not clear how any further cross-examination in addition to that which was so freely permitted could have served to further discredit them. We find that the court did not abuse its discretion where it limited cross-examination.

There were many assignments of error wherein it was claimed that evidence admitted should have been excluded, and also claims of error in the exclusion of evidence. To discuss these in detail would extend this opinion to unreasonable lengths without establishing any new legal principle. We find no error in the trial court's rulings.

■ Appellant excepted to instructions given by the court relative to the testimony of an accomplice upon the ground that the verdict of guilty could not be returned upon such testimony alone, but that it required further corroboration of facts tending to show the commission of the offense. The instruction given by the court was as follows:

"An accomplice is defined to be one concerned with others in the commission of a crime. It is a settled rule in this country that even accomplices in the commission of a crime are competent witnesses, and that the Government has the right to admit their testimony and that of the jury to consider it. The testimony of accomplices, however, is to be received with caution and weighed with great care, and while it is true that a jury may convict on such testimony alone, yet the jury should not rely on it unsupported for a conviction, unless it produces in their minds a positive conviction of its truth. If it does, the jury should act upon it.

"You are instructed, therefore, that you are to receive the testimony of an accomplice with caution and examine it with care. This does not mean, however, that you are arbitrarily to reject it. It only means that you are to examine it with care; and if, having done so, you believe in its truth, then you are to give it the same credence as the testimony of any other witness. In considering the evidence, you should consider his appearance, his manner of testifying, the probability, or improbability of the facts to which he has testified; his motives, or interest in the case; whether or not his evidence is consistent with itself and with the other evidence or admitted facts of the case, and if, having considered his testimony in the light of all these rules you believe that he has told the truth, then I instruct you that the defendant can be convicted on this evidence alone, if that evidence convinces you that this defendant is guilty beyond a reasonable doubt.

"The fact, however, that a person has been convicted of a felony does not disqualify him from testifying as a witness. The fact of such conviction goes only to the credibility of the witness. Such a person should not be treated as an ordinary witness of good character. His testimony should be taken with caution, and in weighing such testimony the jury should consider whether the same has been corroborated. The question of corroboration is to be considered in connection with weighing the testimony, but such witness is not disqualified to testify."

According to the case of Craig et al. v. U. S., 81 F.(2d) 816, decided by this court February 10, 1936, wherein sustain-

ing cases are cited and quoted, the instruction here given correctly stated the law.

 Appellant also complained that the jury was not sufficiently instructed that they must find from the evidence beyond a reasonable doubt the facts set forth in the indictment before a conviction could be had.

The court at various places in the instructions impressed upon the jury that they must find the defendants guilty from the evidence beyond a reasonable doubt. However, upon the foregoing objection having been interposed, the court in reply thereto and in the presence of the jury further stated: "Well, the jury has been told repeatedly in these cases that a conviction can only be sustained or a verdict of guilty if they find them guilty upon the evidence beyond any reasonable doubt."

Appellant in another case before this court, cited in his brief here, was sharply reprimanded for failure to observe rule 10 of this court in the preparation of his case on appeal. In the instant case violations of rule 10 and rule 11 have been even more flagrant. The bill of exceptions, bound in two volumes of typewritten matter, comprise 473 pages, and the briefs on appeal, likewise in two volumes, contain 635 pages. In the former case the court pointed out the importance of winnowing out the useless and presenting only the relevant, and there said: "On the subject of multiplicity of assignments, the Supreme Court, in Central Vermont Ry. v. White, 238 U.S. 507, 508, 509, 35 S.Ct. 865, 866, 59 L.Ed. 1433, Ann.Cas.1916B, 252, said: ' * * * The case was brought here on a record containing so many assignments, covering 18 printed pages, as to make it proper to repeat the ruling in Phillips & C. Constr. Co. v. Seymour, 91 U.S. [646], 648, 23 L.Ed. 341, 342, that the "practice of filing a large number of assignments cannot be approved. It perverts the purpose sought to be subserved by the rule requiring any assignments." ' " Cossack v. United States (C.C.A.) 63 F.(2d) 511, at page 514. See, also, O'Brien's Manual Federal Appellate Procedure, p. 107.

The court at the time of the argument of this case called attention to the state of the record and directed appellant to file an amended brief condensing the presentation of this appeal within reasonable limits. Instead of complying with the request of the court, he filed what was denominated a supplemental reply brief, largely made up of page references to the former briefs and transcript, which only resulted in making "confusion worse confounded."

The court did not dismiss this case for failure to comply with the rules, as it perhaps should have done. Appellant seems to have sensed his violations, but excused his performance by urging that the matter was of such great importance to him that he was fearful that he might overlook some pertinent point. Where so many errors are alleged to have occurred, it would seem that a few considered conclusive could have been selected for presentation. Some brief writers appear to believe that a multitude of claimed errors might possibly serve as substitutes for real error. As a practical matter, the piling up of assignments of error of no merit might result in some vital contention being lost in a multiplicity of irrelevancies. To avoid such consequences, the rules of court have been formulated. In view of the many violations of the rules, this court is disposed to adopt the following language of the Supreme Court of the United States in its condemnation of the practice: "But what is here said is to be understood as an announcement that in the future a failure of that sort may be taken as sufficient ground for dismissal." Local 167 of the International Brotherhood of Teamsters et al. v. United States, 291 U.S. 293, 54 S.Ct. 396, 398, 78 L.Ed. 804.

No error was committed in submitting this case to the jury, and the evidence sustains the verdict.

Affirmed.