## SWARTZ et al. v. UNITED STATES.

### No. 13678.

United States Court of Appeals
Ninth Circuit.

Oct. 22, 1953.

Rehearing Denied Nov. 23, 1953.

———◆———

Leo R. Friedman, San Francisco, Cal., for appellants.

A. William Barlow, U. S. Atty.; Nat Richardson, Jr., Asst. U. S. Atty., Honolulu, Hawaii, Lloyd H. Burke, U. S. Atty., San Francisco, Cal., for appellee.

Before STEPHENS, HEALY and POPE, Circuit Judges.

PER CURIAM.

Appellant Goodman is proprietor of a company dealing in scrap metal. Appellant Swartz, Goodman's stepson, is employed in the business. The two were indicted and convicted under Title 18 U.S.C.A. § 641 of concealing, with intent to convert to their own use and gain, property of the United States, namely certain zinc ingots belonging to the Navy, knowing the same to have been stolen. The contention on appeal is that the evidence is insufficient to support the verdicts of guilty, the point having been raised by motion for verdict and judgment of acquittal made at the conclusion of the trial.

There was some competent and substantial evidence before the jury tending fairly to sustain its verdict as regards both appellants. Beyond this it is not our function to inquire. Hemphill v. United States, 9 Cir., 120 F.2d 115; Maugeri v. United States, 9 Cir., 80 F.2d 199, 202.

The judgment is affirmed.

POPE, Circuit Judge (concurring specially).

Although I am concurring in the result, this case, to my mind, presents difficulties which are not reflected in the foregoing opinion. I think that I should state what those problems are, and what considerations have induced my concurrence.

Appellants were tried and convicted upon count 2 of the indictment, which count charged *concealing* stolen property of the United States. It did not charge *receiving* such property. Had that been the charge, the proof, particularly as to Swartz, would have been simple, for clearly it was known by Swartz to have been stolen when it was purchased at the place of business of the Honolulu Supply Company, the scrap metal concern owned by Goodman, who employed Swartz.

It was the Government's theory that the zinc was concealed by being shipped in drums to a customer of Goodman's in California. This customer had not ordered the zinc, and the invoices of the shipment, (which included other metals which had been ordered), listed the contents as aluminum. The stolen zinc ingots bore the imprint "Missouri". There was no evidence that the ingots found by the California customer in his shipment were so marked. Nor did any witness testify as to who packed the drums. Conceivably zinc could have gotten in the shipment by mistake.

However, the F. B. I. agent investigating the matter of the stolen zinc went to appellants and made inquiry about it on September 8, 1950. It was a few days later, on September 22, that the drums were shipped. When the agent again interviewed Goodman on October 31, the latter said in the presence of Swartz that he had made no shipment of zinc since September 8. He made this statement notwithstanding he had been advised by the California customer, the latter part of September, of the arrival of the zinc there. Not until January 18, 1951, after the F. B. I. had itself located the zinc in California, did appellants' attorney notify the agent that the attorney had located the zinc in California on December 27, 1950. Following this notification the agent went to see Goodman who showed him the file relating to the shipment to California, including copies of the invoices. Certain listed drums were marked with circles and the letters "A. S." Later this file could not be found.

The evidence of motive and opportunity to conceal, when coupled with that of the false statement concerning shipments and the unexplainable delay in giving information as to the whereabouts of the zinc, and considered in the light of the fact that these were unused zinc ingots, not scrap, all adds up to a set of circumstances, consistent with each other, and with the hypothesis of guilt, and inconsistent with every reasonable hypothesis of innocence.