UNITED STATES of America
v.
Thomas E. FENCH, Appellant.

UNITED STATES of America
v.
William H. BLACKWELL, Appellant.

Nos. 71–1086, 71–1149.

United States Court of Appeals,
District of Columbia Circuit.

Oct. 2, 1972.

As Amended Oct. 5, 1972.

Certiorari Denied Jan. 22, 1973.
See 93 S.Ct. 964.

Mr. Irving R. M. Panzer, Washington, D. C. (appointed by this court), was on the brief for appellant in No. 71–1086.

Mr. John A. Shorter, Jr., Washington, D. C., was on the brief for appellant in No. 71–1149.

Mr. Thomas A. Flannery, U. S. Atty. at the time the brief was filed, with whom Messrs. John A. Terry, John G. Gill, Jr. and Robert R. Chapman, Asst. U. S. Attys., were on the brief for appellee.

Before McGOWAN, LEVENTHAL and MacKINNON, Circuit Judges.

MacKINNON, Circuit Judge:

In a three-count indictment appellants Thomas Fench and William Blackwell, and two others—Robert Brown and Walter Barlow, Jr.—were charged with theft of United States Government property (18 U.S.C. § 641); receiving, concealing, or retaining stolen United States Government property (18 U.S.C. § 641); and second-degree burglary (22 D.C.Code § 1801(b)). After a jury trial [1] both appellants were convicted of receiving, concealing, or retaining stolen Government property.[2] Appellant Fench was sentenced to a term of imprisonment for one to three years, while appellant Blackwell was sentenced to two to six years. On this appeal we reject their contentions that certain evidence was improperly admitted and that the court failed to provide an adequate precautionary instruction.

On January 29, 1970, F.B.I. agents were conducting surveillance of appellant Blackwell. At about 5:25 A.M. on that date, they observed him drive his panel truck[3] from Glen Arden, Maryland, to his place of business at 617 Rhode Island Avenue, N.E.,[4] in the District of Columbia, where he arrived at approximately 6:30 A.M. Shortly thereafter, agents followed Robert Brown as he drove appellant Blackwell's truck to the Department of Labor Building, where he proceeded to park the vehicle and enter the building. Brown was observed inside the Labor Department Building "moving very fast from one door to the next attempting, trying knobs on each door, and as he would try a knob and push on the door, he would quickly move to the next door."

Approximately ten minutes after Brown entered the Department of Labor Building, he exited carrying one or possibly two cardboard boxes which appeared to contain heavy items. It was subsequently learned that an I.B.M. typewriter and a Sony tape recorder were missing from two Labor Department offices.

Brown drove the panel truck back to 617 Rhode Island Avenue, arriving between 8:00 and 8:30 A.M. As soon as the truck pulled into the parking lot, appellant Blackwell and Walter Barlow, Jr., appeared at the top of the stairs in front of the building. Brown immediately alighted from the vehicle and walked up the stairs to converse with them. Thereafter, Blackwell motioned Brown and Barlow down the stairs, and all three "hurried" to Blackwell's truck. Brown proceeded to the rear of the truck, while appellant Blackwell and Barlow went to the left side of Barlow's car which was parked eight to ten feet

---

1. Both appellants and Walter Barlow, Jr., were tried together. The fourth codefendant, Robert Brown, entered a plea of guilty to charges of theft of Government property and second-degree burglary.

2. Appellants Fench and Blackwell were both acquitted on the counts charging theft of Government property and second-degree burglary. Walter Barlow, Jr., was found guilty of second-degree burglary and theft of Government property.

3. Blackwell owned a white Ford panel truck bearing Maryland license number 5943–ET. The vehicle had the word "Service" lettered on the door on the driver's side.

4. These premises had once been occupied by a coal company. The lot was "very good size" and included a large office building with a garage at the south end. Blackwell leased the property and had an occupancy permit for the office building.

from the panel truck. Brown transferred one box from the truck to the back seat of the automobile, and he returned to the truck for the other box. Halfway back to the car with the second box, Brown was assisted by appellant Blackwell, who appeared to be in an agitated state. Agents saw Blackwell rush over and grab one of the flaps on the top of the box, and help Brown place it in the automobile. Thereafter, Brown and appellant Blackwell returned to the building, and Barlow got into his car, which contained the two boxes, and he drove off. The F.B.I. agents who followed Barlow indicated that he drove in an evasive manner, apparently aware of the fact that he was under observation.

Shortly after Barlow left the building at 617 Rhode Island Avenue, he returned. He parked his car and immediately proceeded into the building. Thereafter, Brown and appellant Fench approached Barlow's car. Appellant Fench reached into the automobile and removed a cardboard box, and Brown removed a similar box. Both Fench and Brown then hurried along as they carried the two boxes to a large abandoned warehouse which was adjacent to the office building used by Blackwell.[5] As soon as the two placed the cardboard boxes on the ground, they were arrested.

The arresting agents observed an open box at the feet of appellant Fench and Brown, containing the missing I.B.M. typewriter, to which was attached a label bearing a Department of Labor room number and the name of a secretary. The agents also saw a closed box at their feet which, it was subsequently learned, contained the missing Sony tape recorder.[6]

At the trial, the F.B.I. agents recounted the above-described occurrences. The Government informed the trial court that it also desired to present evidence in its case-in-chief of other suspicious activities involving Brown, appellant Fench, and appellant Blackwell's panel truck, which had taken place prior to January 29, 1970. All three defendants objected to the introduction of this evidence on the ground that it would be unduly prejudicial, and the trial court sustained these objections. However, the court ruled that if appellant Fench took the stand in his own behalf, the Government would be permitted to use the proffered testimony as rebuttal evidence.

Following the Government's case-in-chief, the trial court denied the three defendants' motions for acquittal, and they presented their evidence. Appellant Blackwell testified that Brown had worked for him for about six months as a truck driver, and he indicated that Brown was frequently gone with his panel truck for extended periods of time. Blackwell denied that any agreement existed between himself and Brown whereby the latter would use his panel truck to carry away items stolen from Government buildings. Blackwell further testified that on the morning of January 29, 1970, Brown approached him outside of the office building at 617 Rhode Island Avenue and stated: "They got me. They got me." He said that Brown explained this statement by stating: "Well, Blackwell, I hate to get you into trouble, but I stole something." Appellant Blackwell said that he became agitated when he heard this news, but he denied that he helped Brown move the boxes, containing the stolen articles, from his panel truck to Barlow's car. He finally testified that he could not remember whether Brown had used his truck on December 8 or 19, 1969, or January 20, 1970.

Barlow testified that he stopped by appellant Blackwell's place of business on Rhode Island Avenue at approximately 7:00 or 7:30 A.M. on January 29,

---

5. The box which appellant Fench carried contained the Sony tape recorder which was missing from the Department of Labor, while the box which Brown carried contained the missing I.B.M. typewriter.

6. The two boxes and their contents were seized pursuant to a proper search warrant. These items were admitted into evidence at trial without objection.

1970, in order to have his automobile brakes repaired by appellant Fench, one of Blackwell's employees. Barlow said that he had no knowledge of the Labor Department theft or the fact that the boxes which were placed in his car contained stolen property. He further denied that he had driven his automobile in an evasive manner on January 29. He stated that when he returned to the building on Rhode Island Avenue, following his short trip which he indicated was necessitated by his desire to check his brakes, he told Brown that he had been followed by a strange car, and he asked him to remove the boxes. Brown then asked Barlow to drive his car to the rear of the building, but he refused. He then gave the keys to his automobile to Brown, who in turn gave them to appellant Fench. Thereafter, Fench drove the car to the back of the building, where he and Brown subsequently removed the boxes.

Appellant Fench testified that he was employed by Blackwell as a mechanic and truck driver on January 29, 1970. He said that on that date between 8:30 and 9:00 A.M., Brown asked him to drive Barlow's car to the rear of the office building on Rhode Island Avenue, which he did.[7] Thereafter, when Brown asked him to help remove several boxes from Barlow's car, he "wondered" about it. Fench testified, "I didn't know anybody carried anything around there," and he added, "after we got away I saw somebody behind us and I inquired who is that and he [Brown] said just come on, follow me."[8] Fench denied that he knew that the boxes which he helped carry to the abandoned warehouse contained stolen property. He said that he had never stolen anything in his life.

Appellant Fench further testified that at approximately 7:00 A.M. on December 8, 1969, while driving Blackwell's panel truck, he had driven Brown to the Department of Housing and Urban Development Building, so that Brown could visit a friend. He said that after twenty or twenty-five minutes, Brown returned to the truck at a normal pace. Fench indicated that a building guard then approached and requested to see his identification, which he displayed. He stated that he later informed Blackwell of Brown's actions. Fench denied having taken Brown to a Government Building on January 20, 1970.

James Proctor, a truck driver employed by appellant Blackwell, testified that on January 29, 1970, he saw Brown drive the panel truck into the lot at 617 Rhode Island Avenue sometime between 7:00 and 7:30 A.M. He said that Brown entered the room where he was and excitedly said: "They got me." Proctor finally indicated that a short time later Brown asked him to move Barlow's car to the rear of the building, but he refused.

In rebuttal, evidence was introduced of earlier acts of a suspicious nature. Special Police Officer Copeland, from the Department of Housing and Urban Development, testified that at approximately 8:00 A.M. on December 8, 1969, he saw Brown in the H.U.D. Building. He said that as he approached him, Brown exited at a fast pace and entered Blackwell's white panel truck,[9] in which Fench was sitting. Officer Copeland further testified that he observed a box containing two calculating machines on the floor next to the location where Brown had been standing while in the H.U.D. Building. Although he asked for and was shown identification by Brown and Fench, no arrest was made.

Another Government agent testified that at about 7 A.M. on December 19,

---

7. Fench testified that this was not an unusual request. He indicated that many of Blackwell's truck drivers asked him to "check" their automobiles for them.

8. On cross-examination appellant Fench admitted that after he picked up the box and followed Brown toward the abandoned warehouse, he "thought it was something unusual."

9. Officer Copeland's description of the vehicle and its license number established that it was Blackwell's truck.

1969, he observed Blackwell's panel truck [10] pull up and park at the Department of Transportation Building, and he watched the two occupants enter the building. About twenty minutes later, the two persons left the building and drove Blackwell's truck to 617 Rhode Island Avenue, N.E. Although it was dark when he observed the two men, this officer described the driver of the truck as being of average height and medium build, and he indicated that he was wearing a three-quarter length car coat, similar to the type appellant Fench was wearing when he was arrested on January 29, 1970.

A building guard at the National Aeronautical and Space Administration Building also testified that at approximately 9:00 A.M. on January 20, 1970, he saw a parked gray and white panel truck with Maryland license plates and the word "service" lettered on the door on the driver's side.[11] The driver of the truck appeared to be watching him. After the guard found a box containing a calculating machine on the ground outside the N.A.S.A. Building, he started toward the truck to ascertain its license number, but it departed before he could do so. Finally, a Special Agent testified that at approximately 5:30 A.M. on January 28, 1970, the day before the theft in question here, he followed Blackwell's panel truck from Glen Arden, Maryland, to a location near the Department of Transportation Building where Brown, the driver of the truck, conversed with a parking lot attendant and then drove away.

Although the trial judge did not caution the jury on the limited purpose for which the rebuttal evidence was being admitted at the exact time such evidence was received, he did provide a limiting instruction at the time of his jury charge:

In this case the Government has introduced evidence tending to show suspi-

cious activity on the part of some of the Defendants on previous dates not mentioned in the indictment.

Such evidence cannot be considered by you as actual proof of the guilt of any of the Defendants of the crimes charged in the indictment; that evidence of that suspicious activity, however, was only admitted to be considered by you on the question of intent, absence of a mistake, or the existence of a common scheme or plan on the part of the Defendant [sic] on the 29th of January, 1970.

I

The two appellants contend that the trial court erred in permitting the Government to introduce rebuttal testimony concerning prior suspicious actions for which they were not on trial. They further assert that the trial judge in any event failed to provide an adequate precautionary instruction regarding the limited purpose for which such evidence was admitted. We, however, reject both of these contentions.

██ The trial court is vested with broad discretion in determining whether to admit or exclude rebuttal evidence. See Goldsby v. United States, 160 U.S. 70, 74, 16 S.Ct. 216, 40 L.Ed. 343 (1895); Brooke v. United States, 128 U.S.App.D.C. 19, 26, 385 F.2d 279, 286 (1967). Furthermore, a trial court's ruling upon the relevancy of evidence similarly "depends upon the exercise of the sound discretion of the trial judge and will not be disturbed upon appeal except for grave abuse." Hardy v. United States, 118 U.S.App.D.C. 253, 254, 335 F.2d 288, 289 (1964). See Harper v. United States, 99 U.S.App.D.C. 324, 239 F.2d 945 (1956); Bracey v. United States, 79 U.S.App.D.C. 23, 27, 142 F.2d 85, 89, cert. denied, 322 U.S. 762, 64 S. Ct. 1274, 88 L.Ed. 1589 (1944).

██ Although evidence of criminal conduct for which a defendant is not on

---

10. Like Officer Copeland, Special Agent Mahan had obtained the license number of the vehicle.

11. This generally described Blackwell's panel truck. See note 3, supra.

trial, as well as evidence that falls short of provable criminal conduct, may not be admitted "to prove *disposition* to commit crime, from which the jury may infer that the defendant committed the crime charged",[12] it is well recognized that such evidence may be admitted for limited purposes if it is relevant to certain issues properly before the jury, *provided* that its probative value outweighs its prejudicial effect. Where the trial court determines that the probative value of such evidence outweighs its possible prejudice, it "is admissible when relevant to (1) motive, (2) intent, (3) the absence of mistake or accident, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of the one tends to establish the other, and (5) the identity of the person charged with the commission of the crime on trial."[13] Drew v. United States, 118 U.S.App.D.C. 11, 16, 331 F.2d 85, 90 (1964). *See* Bracey v. United States, 79 U.S.App.D. C. 23, 25–26, 142 F.2d 85, 87–88, cert. denied, 322 U.S. 762, 64 S.Ct. 1274, 88 L.Ed. 1589 (1944); Bradley v. United States, 140 U.S.App.D.C. 7, 12–13, 433 F.2d 1113, 1118–1119 (1969). *See also* McCormick on Evidence at 328–333 (1954 ed.).

When the Government indicated its intention to introduce certain evidence relating to prior suspicious acts involving appellant Fench, Brown, and appellant Blackwell's panel truck, as part of its case-in-chief, the trial judge sustained the objections of the three defendants. The court evidently did not believe it to be admissible *at that point of the trial.* However, when notified that appellant Fench planned to testify in his own behalf that he had no knowledge that the boxes in question contained stolen articles or of prior thefts of Government property in the District of Columbia, the trial court decided that the admission of such evidence by the Government would be proper in rebuttal.[14]

■ The fact that both appellants denied actual knowledge of the stolen contents of the two boxes which they were connected with—Blackwell, when he was observed assisting Brown move them from his panel truck to Barlow's automobile, and Fench, when he helped Brown carry them to the abandoned warehouse—clearly demonstrates that rebuttal evidence on the question of intent or the absence of mistake was properly admitted. Similarly, since both appellants were only charged as aiders and abettors, with respect to the theft of Government property and second-degree burglary counts, it becomes clear that such testimony was also appropriately

---

12. Drew v. United States, 118 U.S.App. D.C. 11, 15, 331 F.2d 85, 89 (1964) (emphasis in original). *See* United States v. Bobbitt, 146 U.S.App.D.C. 224, 227, 450 F.2d 685, 688 (1971); Bradley v. United States, 140 U.S.App.D.C. 7, 11–12, 433 F.2d 1113, 1117–1118 (1969). *See also* McCormick on Evidence at 326–327 (1954 ed.); 1 Wigmore, Evidence §§ 192–194 (3rd ed. 1940); 1 Underhill, Criminal Evidence §§ 205–212 (5th ed. 1956).

13. Although this list of exceptions to the general rule precluding admission of past criminal or suspicious acts is not necessarily exhaustive, it does denote the major ones. *See* 2 Wigmore, Evidence §§ 300–371 (3rd ed. 1940); McCormick on Evidence at 328–331 (1954 ed.).

14. Although the trial court's determination regarding the admissibility of the prior suspicious acts into evidence as rebuttal testimony was made with specific reference to appellant Fench's circumstances, it is apparent from the general jury instruction which it provided regarding such evidence that the court also recognized its applicability to appellant Blackwell's case. We therefore consider the propriety of the trial court's admission of the Government rebuttal testimony with respect to both appellants. To protect the interests of Fench and Blackwell, the court was careful to note that it was only admitting the rebuttal testimony for the purpose of demonstrating intent, absence of mistake, or the existence of a common scheme or plan, and it instructed the jury accordingly. *See* discussion, *infra*, regarding the adequacy of the trial court's limiting instruction concerning the rebuttal evidence.

admitted to help establish a possible common scheme or plan, whereby they might be directly connected with Brown, the actual perpetrator of the crimes.

The court obviously believed that the testimony by the defendants themselves rendered the evidence of their prior suspicious activity of sufficient probative value in rebuttal to overcome its possible prejudicial effect. In light of the legal principles set out above, we are unable to hold that the trial court abused its broad discretion in reaching this determination. *See, e. g.,* Bracey v. United States, 79 U.S.App.D.C. 23, 142 F.2d 85, cert. denied, 322 U.S. 762, 64 S.Ct. 1274, 88 L.Ed. 1589 (1944). *See also* 2 Wigmore, Evidence § 304 (3d ed. 1940).

■■ "Having found the [rebuttal] evidence admissible, the trial court was, of course, under a duty to instruct the jury on the limited purpose for which the evidence was to be considered." United States v. Gay, 133 U.S.App.D.C. 337, 340–341, 410 F.2d 1036, 1039–1040 (1969). *See* United States v. Bobbitt, 146 U.S.App.D.C. 224, 450 F.2d 685 (1971). The trial court was careful during its instructions to the jury to satisfy this requirement. It expressly informed the jury "that evidence of that suspicious activity * * * was only admitted to be considered by you on the question of intent, absence of a mistake, or the existence of a common scheme or plan on the part of the Defendant on the 29th of January, 1970." We believe that this explicit direction was sufficient to fully protect the interests of both appellants.

■ Although appellants cite such cases as United States v. Bussey, 139 U.S.App.D.C. 268, 272–273, 432 F.2d 1330, 1334–1335 (1970), and United States v. McClain, 142 U.S.App.D.C. 213, 218, 440 F.2d 241, 246 (1971), in support of their contention that the trial court erred in not providing a cautionary instruction at the exact time the evidence of past suspicious activity was admitted, we reject this contention. In *Bussey,* we expressly concluded that the evidence in question, unlike the rebuttal testimony admitted here, was of insufficient probative value to outweigh its inflammatory effect on the jury and was otherwise unobjectionable. Therefore, we held that a cautionary instruction during the general charge to the jury was not adequate to rectify the error caused by its admission. *See* 139 U.S.App.D.C. at 272, 432 F.2d at 1334. Here, however, the allegedly prejudicial testimony was properly admitted.

We similarly believe that the *McClain* decision does not require us to reverse appellants' convictions. In *McClain,* the evidence in issue concerned highly prejudicial testimony concerning prior acts of violence allegedly committed by the defendant against his wife, which was admitted to demonstrate malice in support of the prosecution's contention that he had murdered her. Under such inflammatory circumstances, the need for an immediate cautionary instruction, regarding the limited permissible use of such testimony, is apparent. Here, however, the rebuttal evidence was of a much less inflammatory nature and the trial judge did provide an adequate cautionary instruction during a jury charge. This is not a case where the testimony in question occurred in the middle of a long trial. Rather, it was admitted in rebuttal and the instruction followed the very next day. No additional evidence was presented between the admission of the rebuttal testimony and the time the limiting instruction was provided. Under such circumstances, where the limiting instruction followed the testimony, in such close proximity, we do not believe that *McClain* should be read as requiring reversal in a case where proof of guilt is as convincing as exists here. *See* United States v. Bobbitt, 146 U.S.App.D.C. 224, 450 F.2d 685 (1971).

**II**

■ Appellants also contend that there was insufficient evidence to sustain their convictions for receiving, concealing, or retaining stolen Government

property. When evaluating a motion for acquittal no authority need be cited for the rule that the trial court must view the evidence in the light most favorable to the Government, "giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact". Curley v. United States, 81 U.S.App.D.C. 389, 392, 160 F.2d 229, 232, cert. denied, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947). "It is only when there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt that the judge may properly take the case from the jury." United States v. Lumpkin, 145 U.S.App.D.C. 162, 168, 448 F.2d 1085, 1091 (1971). See Johnson v. United States, 138 U.S.App.D.C. 174, 176, 426 F.2d 651, 653 (1970) (en banc), cert. dismissed as improvidently granted, 401 U.S. 846, 91 S.Ct. 1258, 28 L.Ed.2d 523 (1971). See also Cooper v. United States, 94 U.S.App.D.C. 343, 345, 218 F.2d 39, 41 (1954). Moreover, when applying this standard, no legal distinction is made between circumstantial evidence and direct evidence. See Holland v. United States, 348 U.S. 121, 139–140, 75 S.Ct. 127, 99 L.Ed. 150 (1954); Hunt v. United States, 115 U.S.App.D.C. 1, 3, 316 F.2d 652, 654 (1963). See also Anderson v. United States, 406 F.2d 529, 532 (8th Cir. 1969).

## A. APPELLANT FENCH

▆▆▆ To establish guilt on the receiving, concealing, or retaining charge, under 18 U.S.C. § 641, the Government only had to demonstrate that appellant Fench received, *concealed,* or retained the stolen Government property in question with the intent to convert it to his use or gain, knowing it to have been stolen. See, e. g., Lewis v. Hudspeth, 103 F.2d 23, 24 (10th Cir. 1939).[15]

The evidence presented by the Government indicated: (1) that appellant Fench walked with Brown to Barlow's automobile and removed one of the two boxes which contained the stolen Government property; (2) that he thereafter hurried along with Brown to an abandoned warehouse, located some 125 yards from the car, where they laid down the boxes in question; and (3) that when appellant Fench was arrested at the warehouse, he was standing less than two feet from an open box containing a visible typewriter, to which was attached a label identifying it as having come from the Department of Labor. Viewing this evidence in the light most favorable to the Government, we believe it clearly sufficient—when considered in conjunction with the inference which could be properly drawn by the jury from the possession of recently stolen property—to warrant the denial of appellant Fench's motion for acquittal.

Furthermore, appellant Fench's own testimony aided the Government's case.[16] He admitted that after he drove Barlow's car to the rear of the building at 617 Rhode Island Avenue, pursuant to Brown's request, and picked up the box to carry it to the abandoned warehouse, he "thought it was something unusual." The Government's rebuttal evidence further bolstered its case against Fench. When all of the evidence is considered, it becomes clear that it was sufficient to

15. With respect to appellant Fench, the trial court properly instructed the jury that it might appropriately infer from the fact of exclusive possession of recently stolen property that such possession was "guilty possession," unless otherwise satisfactorily explained. See Rugendorf v. United States, 376 U.S. 528, 536–537, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964); Wilson v. United States, 162 U.S. 613, 619, 16 S.Ct. 895, 40 L.Ed. 1090 (1896); United States v. Coggins, 140 U.S.App. D.C. 134, 136, 433 F.2d 1357, 1359 (1970); United States v. Johnson, 140 U.S.App.D.C. 54, 58–59, 433 F.2d 1160, 1164–1165 (1970); Pendergrast v. United States, 135 U.S.App.D.C. 20, 31, 416 F.2d 776, 787, cert. denied, 395 U.S. 926, 89 S.Ct. 1782, 23 L.Ed.2d 243 (1969). See also discussion in Part II (B) of this opinion, *infra,* regarding appellant Blackwell's objection to the trial court's use of this instruction.

16. See Thompson v. United States, 132 U.S.App.D.C. 38, 39–40, 405 F.2d 1106, 1107–1108 (1968).

support appellant Fench's conviction. *See, e. g.*, Swartz v. United States, 207 F.2d 727 (9th Cir. 1953), cert. denied, 347 U.S. 919, 74 S.Ct. 518, 98 L.Ed. 1074 (1954); Feinstein v. United States, 390 F.2d 50, 54 (8th Cir.), cert. denied, Jackson v. United States, 392 U.S. 943, 88 S.Ct. 2327, 20 L.Ed.2d 1405 (1968).

## B. APPELLANT BLACKWELL

 Blackwell asserts for the first time on appeal, that the trial court erred in instructing the jury as to the inference which might be properly drawn from the possession of recently stolen Government property. Since he failed to comply with Rule 30, Fed.R.Crim.P., by appropriately raising this objection before the trial court, appellant Blackwell must now establish that the trial judge committed plain error with respect to this instruction. Rule 52(b), Fed.R.Crim.P. *See* United States v. Green, 137 U.S.App.D.C. 424, 425, 424 F.2d 912, 913 (1970), cert. denied, 400 U.S. 997, 91 S.Ct. 473, 27 L.Ed.2d 447 (1971). *See also* Villaroman v. United States, 87 U.S.App.D.C. 240, 241, 184 F. 2d 261, 262 (1950). However, while we might regard Blackwell's failure to object to this instruction at trial as dispositive,[17] we need not reject his contention on that ground.

 It has long been recognized that in cases involving crimes of a larcenous nature, the inference which may properly be drawn from the fact of exclusive possession of recently stolen property is that the possessor actually participated in the taking *or* that the possession is "guilty possession," unless such possession is otherwise satisfactorily explained.[18] More specifically, courts have affirmed the application of this inference in cases involving the receipt of stolen property. *See* United States v. Curiale, 414 F.2d 744, 748 (2nd Cir.), cert. denied, 396 U.S. 959, 90 S.Ct. 433, 24 L.Ed. 424 (1969); Williams v. United States, 281 A.2d 293, 294 (D.C.App. 1971). *See also* Blue v. United States, 270 A.2d 508 (D.C.App.1970). Since the trial court's instruction in the instant case,[19] regarding the proper inference

17. *See, e. g.*, United States v. Carter, 136 U.S.App.D.C. 308, 420 F.2d 150 (1969), cert. denied, 397 U.S. 1017, 90 S.Ct. 1253, 25 L.Ed.2d 432 (1970).

18. *See* note 15, *supra*, and cases cited therein.

19. The court instructed the jury as follows:

> If you find beyond a reasonable doubt that the Defendant was in exclusive possession of the property of the United States and that this property had recently been stolen and that the possession of the [sic] by the Defendant on the day in question and under the circumstances in question has not been satisfactorily explained, then you may, if you see fit to do so, infer therefrom that the Defendant is guilty of as to housebreaking, Count One; the theft of Government property as to Count Two; and receiving, concealing, and retaining Government property knowing the same to have been stolen as to Count Three. You are not required to so infer, but you may do so if you deem it appropriate.
>
> With respect to the term, "exclusive possession", exclusive does not neces-

sarily mean [sic] possession to the exclusion of all other persons; it means merely that the accused must bear some distinctive relationship to the property before the inference of guilt may be drawn. Thus possession shared with one or more other persons, or in the case of Blackwell, the location on his coal yard premises of such property with his knowledge would be considered exclusive possession.

The term "recently stolen" does not refer to any specific period of time. It is for you to determine on the basis of all the facts and circumstances whether the property was recently stolen. The longer the period of time since the property was stolen, the weaker the inference which may be drawn from the possession of the property.

1 Devitt & Blackmar Fed. Jury Instr. §§ 13.11, 13.12 (2d ed. 1970) omits any statement that possession need be "exclusive." *See* however, § 48.11 (1971 Pocket Part).

Although appellant Blackwell challenges the fact that the trial court indicated that "the location on [Blackwell's] coal yard premises at [617 Rhode Island Avenue] of such property with his knowl-

which might be drawn from the exclusive possession of recently stolen property, conformed substantially to the instructions approved by this court in *Johnson*[20] and *Coggins*,[21] it is apparent that the trial judge's use of such an instruction was not error.

This brings us to consider the sufficiency of the evidence. When the evidence pertaining to appellant Blackwell is viewed in the light most favorable to the Government, it indicates: (1) that Blackwell was the lessee of the premises at 617 Rhode Island Avenue, N.E.; (2) that he permitted Brown to drive his panel truck on the morning when he committed the thefts in question; (3) that Blackwell came out of his office building with Barlow as soon as Brown returned with his truck from the Department of Labor Building, whereupon all three men conversed; (4) that appellant Blackwell "motioned" Brown and Barlow down the stairs of the building; (5) that Blackwell himself hurried to the panel truck which was parked in the adjacent lot; (6) that he then took a position next to Barlow's automobile while Brown carried the first of the two boxes which contained the stolen Government property from the truck and placed it in the back seat of the car; (7) that as Brown was similarly transferring the second box, Blackwell became agitated and rushed over to assist Brown in

carrying it; and (8) that Blackwell thereafter returned to his office building. Appellant Blackwell's own testimony also strengthened the Government's case.[22] He admitted that Brown said to him, "They got me," several times after he returned to the 617 Rhode Island Avenue building in the panel truck. Blackwell further admitted that Brown informed him that he had stolen something. The rebuttal evidence of the Government provided additional evidence of Blackwell's guilt.

In light of the elements which the Government had to establish regarding the receiving, concealing, or retaining charge, we believe that this evidence—when considered in concert with the inference which the jury could properly draw from the possession of recently stolen property—was clearly sufficient to warrant the denial of Blackwell's motion for acquittal.

When all of the testimony is considered, it is apparent that there was sufficient evidence from which the jury could reasonably have concluded that appellant Blackwell was guilty of receiving, concealing, or retaining stolen Government property, within the meaning of 18 U.S.C. § 641.

For the foregoing reasons, the convictions of Thomas Fench and William Blackwell are

Affirmed.

---

edge *would* be considered exclusive possession," we do not believe that this isolated slip is ground for reversal. The Government's proposed instruction in this regard, which was granted by the trial court, included the word "could." The court's apparently inadvertent use of the word "would," which is clearly inconsistent with the general tenor of the remaining remarks on this issue, is not an error of such magnitude that it can rationally be considered "plain error" within the meaning of Rule 52(b), Fed.R.Crim.P. Under such circumstances, we are unable

to conclude that reversal on this ground is warranted.

20. United States v. Johnson, 140 U.S.App. D.C. 54, 57 n. 17, 433 F.2d 1160, 1163 n. 17 (1970).

21. United States v. Coggins, 140 U.S.App. D.C. 134, 138–139 n. 31, 433 F.2d 1357, 1361–1362 n. 31 (1970).

22. *See* Thompson v. United States, 132 U.S.App.D.C. 38, 39–40, 405 F.2d 1106, 1107–1108 (1968).