Richard THOMAS, Appellant,

v.

UNITED STATES of America, Appellee.

No. 14355.

United States Court of Appeals Ninth Circuit.

May 18, 1955.

Rehearing Denied Aug. 29, 1955.

Writ of Certiorari Denied Dec. 5, 1955.

See 76 S.Ct. 194.

Gary W. Sawtelle, Los Angeles, Cal., Darrel G. Brown, Tucson, Ariz., for appellant.

Jack D. H. Hays, U. S. Atty., Phoenix, Ariz., Robert O. Roylston, Asst. U. S. Atty., Tucson, Ariz., W. S. Tucker, Atty., Securities & Exchange Commission, San Francisco,. Cal., William H. Timbers, Atty., S. E. C., Washington, D. C., for appellee.

Before STEPHENS and FEE, Circuit Judges, and WIIG, District Judge.

JAMES ALGER FEE, Circuit Judge.

Richard Thomas and Walter E. Powell were convicted after a trial before a jury on three counts of an indictment charging violations of 15 U.S.C.A. § 77q(a) (2), which reads:

"(a) It shall be unlawful for any person in the sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly * * *

"(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."

They were acquitted upon Count 4, which charged conspiracy between these defendants to commit the substantive offenses. Powell does not appeal.

Counts 1 and 2 were based upon the same alleged sale of common stock of Thomascolor, Inc., to Jerome K. George and Myrtle T. George for $3,500.00 by means of untrue statements of material facts known by defendants to be untrue when made and by omissions to state material facts, which representations and omissions are alleged in detail. The difference between these two counts is that, in the first, use of the mails in the consummation of the sale is alleged, and, in the second, use of means and instruments of transportation is set up, in that defendants caused Powell to travel by commercial airline from Los Angeles to Phoenix.

Count 3 set up a similar sale of securities to Bailey Spencer, with alleged untrue statements of material facts and alleged omissions to state material facts, wherein it was also set up that in this. sale defendants caused Thomas to travel by private motor vehicle from the vicinity of Los Angeles to Phoenix and Willcox, Arizona.

The evidence shows the following situation: Thomas invented a color photographic process which was patented. He organized Thomascolor, Inc., of which he was president, to exploit the process. This corporation prepared a statement for filing with the Securities and Exchange Commission. Ebasco Services were employed to review the statement, assist in obtaining registration and for further services. In December, 1947, following hearings, sale of securities was approved. There were only two small sales of stock. Upon recommendation of Ebasco, the registration statement was withdrawn about March, 1948. There were efforts to obtain private financing without public sale

of stock until the summer of 1949. Thomascolor was in bad financial condition during the latter period, if it was not then insolvent, of which condition there was evidence.

The evidence as to the incidents upon which the charges were based is briefed here. On December 29, Mr. and Mrs. George were in Los Angeles, California. On the evening before, Powell, calling on long distance telephone from Los Angeles to Mr. George in Phoenix, had first mentioned Thomascolor, inquiring whether the latter was satisfied with his job, and asked him to come to California as Powell had something good for him. There Powell introduced Thomas to George, and the two defendants, in a lengthy conversation, induced the Georges to buy stock in the corporation by means of representation shown to be false. The purchase agreement was prepared in the office of Thomas on the letterhead of Richard Thomas and bears his signature. The stock offered for sale is therein described as personally owned by Thomas. This offer was accepted according to its terms by the signature of George. Later that day, Powell traveled by plane with the Georges from Los Angeles, California, to Phoenix, Arizona, where he registered at the Adams Hotel. He next appeared with Thomas at the residence of the Georges in Phoenix on the evening of December 31, 1948. Thomas was at that time also registered at the same hotel. Powell and Thomas talked to Bailey Spencer concerning the purchase of stock in Thomascolor at this hotel in Phoenix on the next day, January 1. They further made representations to Spencer at his home on January 3, and there received his check for stock. On January 4, Thomas and Powell were registered at Frank's Auto Court, at Willcox, Arizona, with a Cadillac car bearing California License No. 445166. At this time, they obtained approximately fourteen hundred dollars from the Georges. However, the Georges advised they had not been able to raise the entire purchase price, and defendants instructed them in Arizona to mail the balance of the money to the Thomascolor address in Los Angeles, which the Georges later did. The stock certificates delivered to the Georges were in the name of Thomas and endorsed by him. Both Thomas and Powell had a conversation with Spencer in Phoenix at the Adams Hotel concerning the purchase of stock about January 1, 1949. Powell later called at Spencer's home at Willcox on January 3, 1949, where he delivered a distributorship agreement and picked up Spencer's check for $3,000.00, made payable to Thomas at Powell's instruction, in payment for the stock and distributorship. The check is endorsed "Richard Thomas." The stock certificates were later delivered to Spencer by mail.

The sufficiency of the indictment was not raised. However, this process was extremely inartistic. The single transaction of the sale of the stock to the Georges is divided between two counts in order to relate this unified transaction, first, with use of the mails and, second, with the use of means of transportation in interstate commerce. Since it was unchallenged, fair notice was given to defendant, and conviction was on both of these counts, it is unnecessary to decide what would have been the situation if there had been conviction on only one of these practically identical charges. The charge of Count 3 was necessarily separate, as it related to a sale of a different block of stock to Spencer. All of the use of means of transportation could have been specified for this sale as well as the sale to George. In any event, the specification of use could be treated as surplusage. The trial judge did not so treat either of the counts, but left the jury to determine guilt or innocence as to each. The judge gave instructions on this whole complex subject, which were models of clarity and to which no exceptions were taken. As part of the elaborate charge, the court instructed as follows:

> "As to each of the first three counts, therefore, the Government must establish beyond a reasonable doubt that the securities were

sold and the purchaser's cash and checks obtained, were obtained by the misrepresentation or concealment of a material fact or facts, and that the mails or a means of transportation in interstate commerce were used in connection therewith. The sale and obtaining of the purchaser's cash and checks, the misrepresentation and the use of the mails or means of interstate commerce, are all essential elements of the offenses alleged under the first three counts of the indictment."

■ There are several questions raised. First, it is said there was not sufficient evidence to be submitted to the jury to establish that the instruments of transportation and communication in interstate commerce were used to consummate the crime or that the mails were used in that connection. Second, it is contended there was not enough evidence to convict on any count. Third, the claim is made that, since Thomas was found not guilty on the conspiracy count, the verdicts of guilty against him on the substantive counts were inconsistent. Finally, error is predicated upon the allowance of questions by the government to refresh the memory of its witnesses upon direct examination.

The first question relates to the proof of the "use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails directly or indirectly" in the sale of securities. The element must be proved to the satisfaction of the jury beyond a reasonable doubt or there could be no conviction. No exception was taken to the instructions of the court regarding the use. The sufficiency of the evidence to establish these allegations of the indictment is challenged.

But there was evidence as to each count, which, if believed by the jury, would have so proved such allegations as to such use. It was, it is true, not direct testimony, but was indirect in its character. This did not prevent its acceptance by that body. It was of such a character that it might well have produced conviction in an impartial mind that such means or instruments of transportation or the mails, interstate, were made use of by Thomas. The connected story has been set forth in this regard. A review of the record convinces this Court that there was evidence from which the jury could reasonably have found that defendants caused Powell to travel by commercial airline from Los Angeles, California, to Phoenix, Arizona, about December 29, 1948, and Thomas to travel from some place in California near Los Angeles by private motor vehicle to Phoenix and Willcox in Arizona about December 30, 1948. But the use of the mail to send three checks from Arizona to Thomascolor, Inc., in California, was conclusively established by the testimony, the checks and the return registry receipt. This was pursuant to the agreement made when Powell and Thomas called upon George at Willcox to get the money, and he advised them that he had been able to raise only $1,400.00. There is a stipulation that Mrs. George, if called as a witness, would testify that thereafter the three checks above mentioned were mailed by the Georges from Arizona to Thomascolor, Inc., in California, pursuant to instructions from Thomas and Powell, and that the registry return receipt evidences this mailing. George identified one of the checks and his signature on the back of it, and the endorsements on all three checks were shown to be the signature of Thomas. There was no stipulation that the testimony of Mrs. George was true, but it is the only evidence in the record on the subject and was certainly sufficient for the jury to conclude from the instructions of the court that the mailing was so accomplished, especially since there is no contradictory evidence in the record.

It is true that the use of the mails was alleged and proven only as to one count of the indictment. However, the transactions were interwoven. Since the verdict and sentence on the three counts was imposed generally and was not beyond what any one count would sustain, if sufficiently proved, there is no neces-

sity to go further. Nemec v. United States, 9 Cir., 191 F.2d 810; Baker v. United States, 5 Cir., 156 F.2d 386; Harper v. United States, 8 Cir., 143 F.2d 795.

As to the first two counts, the evidence as to other features was amply sufficient to sustain a conviction. There could be no doubt that the money and checks transmitted by mail, as described in the testimony which it was agreed Mrs. George would give, were part payment in a sale of the securities described in the indictment. The money was paid on account of the stock purchase agreement drawn and signed by Thomas on his own letterhead at the Thomascolor offices for the sale of his personally owned stock. On cross-examination of George, it appeared that the promise of a job was held out as an inducement to get him to buy these securities. Of course, the existence of such an inducement would not destroy the sale. The evidence shows that Spencer was given a written option for a distributorship as an inducement to the purchase of more stock, but there was still a sale. Under the statute, "any security given or delivered with, or as a bonus on account of, any purchase of securities or any other thing, shall be conclusively presumed to constitute a part of the subject of such purchase and to have been offered and sold for value." 15 U.S.C.A. § 77b(3). Any attempt to conceal the sale by such devices is not countenanced by the statute. But here there could be no other satisfactory explanation of the transaction.

There was also evidence to support the allegations of the indictment that Thomas and Powell, jointly, willfully and knowingly made untrue statements of the material facts and omissions to state material facts which resulted in sales of stock to the Georges and Spencer.

■■ The jury failed to convict on the conspiracy count, and it is claimed there is an inconsistency. Verdicts on different counts need not be consistent. Besides, there was here no inconsistency shown. Allen v. United States, 9 Cir., 186 F.2d 439.

■ It appears that the United States Attorney was permitted to suggest circumstances which refreshed the memory of witnesses after each had stated positively that his memory on the subject was exhausted. In each instance, the witness testified to further facts after his memory was refreshed. The trial judge has wide limits of discretion in such a matter, and we are not inclined to establish barriers except in case of clear injustice, which most certainly is not present here. Wigmore on Evidence (3rd Ed.), §§ 772, 777.

The able trial judge was fair and impartial. Defendant was convicted upon sufficient evidence.

Affirmed.