**MAGNOLIA MOTOR & LOGGING COMPANY, a corporation, Appellant,**

v.

**UNITED STATES of America,**
Appellee.

No. 15805.

United States Court of Appeals
Ninth Circuit.

March 24, 1959.

Rehearing Denied May 4, 1959.

Philip C. Wilkins, Sacramento, Cal., Sidney E. Ainsworth, Ashland, Or., Richard N. Little, Sacramento, Cal., for appellant.

Robert H. Schnacke, U. S. Atty., San Francisco, Cal., G. Joseph Bertain, Jr., Asst. U. S. Atty., Rita Singer, Atty., Office of the Regional Solicitor, Sacramento Region, Dept. of the Interior, Sacramento, Cal., for appellee.

Before MATHEWS and HAMLEY, Circuit Judges, and ROSS, District Judge.

MATHEWS, Circuit Judge.

On February 8, 1957, in the United States District Court for the Northern District of California, Northern Division, R. Drew Lamb and appellant, Magnolia Motor & Logging Company, a Mississippi corporation, were indicted in two counts.

Each count alleged: "That the defendant, Magnolia Motor and Logging Co. [appellant], is a corporation organized and existing under the laws of the State of Mississippi; that the defendant, R. Drew Lamb, is the president of said corporation and at all times herein mentioned was acting within the course and scope of his employment as such president."

Count I alleged: "That between the 1st day of June, 1953, and the 30th day of December, 1954, in the County of Humboldt, in the Northern Division of the Northern District of California, and within the jurisdiction of this [the District] Court, the defendants hereto [Lamb and appellant] did knowingly, willfully and unlawfully steal and convert to their own use personal property of the United States, said personal property being more particularly described as follows: Approximately 10,300 fir, cedar and hemlock logs of a value of more than $100." Thus count I charged a violation of 18 U.S.C.A. § 641.[1]

Count II alleged: "That between the 1st day of June, 1953, and the 30th day of September, 1954, the defendants hereto [Lamb and appellant] did knowingly, willfully and unlawfully depredate certain property of the United States, to-wit: Real property in the County of Humboldt, in the Northern Division of the Northern District of California, and within the jurisdiction of this [the District] Court, described as follows: Portions of Sections 33 and 34, Township 11½ North, Range 3 East, Humboldt Meridian; that said depredation exceeded the sum of $100." Thus count II charged a violation of 18 U.S.C.A. § 1361.[2]

Defendants (Lamb and appellant) moved to dismiss the indictment. That motion was denied.[3] Thereafter defendants pleaded not guilty and moved for a bill of particulars. That motion was granted to the extent of requiring the Government to describe "the area or areas where the charged depredation [was] alleged to have occurred, so that such areas [could] be located with reasonable certainty upon the terrain involved in this case." Accordingly, the Government filed a bill of particulars wherein the areas alleged to have been depredated were described as follows:

"1. A portion of the drainage of the west fork of Pecwan Creek in and near the common boundary of Sections 33 and 34, and contiguous

1. Section 641 provides:

"Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, * * * any record, voucher, money, or thing of value of the United States * * *

"Shall be fined not more than $10,000 or imprisoned not more than ten years, or both; but if the value of such property does not exceed the sum of $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both. * * *

2. Section 1361 provides:

"Whoever willfully injures or commits any depredation against any property of the United States * * * shall be punished as follows:

"If the damage to such property exceeds the sum of $100, by a fine of not more than $10,000 or imprisonment for not more than ten years, or both; if the damage to such property does not exceed the sum of $100, by a fine of not more than $1,000 or by imprisonment for not more than one year, or both."

3. United States v. Lamb, D.C.N.D.Cal., 150 F.Supp. 310.

to the north and south boundaries of said Sections in Township 11½ North, Range 3 East, Humboldt Base and Meridian, comprising approximately 40 acres, more or less.

"2. A portion of the principal drainage of Buzzard Creek in Section 34, Township 11½ North, Range 3 East, Humboldt Base and Meridian, contiguous to the south boundary of said Section and Township, comprising 10 acres, more or less.

"3. A portion of a minor drainage of Buzzard Creek in said Section 34, lying east of the said principal drainage, contiguous to the south boundary of said Section and Township, comprising approximately 2 acres."

Thereafter defendants had a jury trial. The jury rendered a verdict finding Lamb not guilty on each count of the indictment and a verdict finding appellant guilty on each count. A judgment of conviction was entered, sentencing appellant to pay a fine of $10,000 on each count. This appeal is from that judgment.

**I**

■ Appellant contends that the District Court erred in denying the motion to dismiss the idictment. The stated ground of that motion was, in substance, that neither count of the indictment charged an offense against the United States. Actually, as stated above, count I charged a violation of 18 U.S.C.A. § 641, and count II charged a violation of 18 U.S.C.A. § 1361. Obviously, these violations constituted offenses against the United States. Hence the motion to dismiss the indictment was properly denied.

**II**

Appellant contends that the District Court gave, and erred in giving, the following instruction to the jury: "You are instructed that the land now known as Township 11½ North, Range 3 East, Humboldt Base and Meridian, is and was the property of the United States during the periods of time charged in the indictment."

Actually, that instruction was not given. Instead, the jury was instructed as follows: "As a matter of law, this particular unsurveyed land,[4] which did exist, belonged to the United States of America. That is a legal fact. You are not required to find legal facts, and perhaps I should have told you this before: A legal fact is a legal conclusion, and the legal conclusion dictated by the facts here as to the ownership of this land is that it belonged, as part of the public domain, to the United States of America, and not only belonged to the United States of America, but belonged to it from the day when the treaty with Mexico[5] was effected around 1850 when California became a State. That is a legal fact."[6]

Thus, in effect, the jury was instructed that Township 11½[7] was at all pertinent times the property of the United States.

■ Appellant contends that whether Township 11½ was the property of the United States was a question of fact to be determined by the jury. There is no merit in this contention. The evidence conclusively showed that Township 11½ was at all pertinent times the property of the United States. The jury was properly so instructed.

---

4. Meaning Township 11½ North, Range 3 East, Humboldt Base and Meridian.

5. Meaning the Treaty of Guadalupe Hidalgo, February 2, 1848, 9 Stat. 922.

6. This instruction is found in the supplemental transcript of record filed here on January 2, 1959.

7. Wherever used in this opinion, the phrase "Township 11" means Township 11 North, Range 3 East, Humboldt Base and Meridian; the phrase "Township 11½" means township 11½ North, Range 3 East, Humboldt Base and Meridian; and the phrase "Township 12" means Township 12 North, Range 3 East, Humboldt Base and Meridian.

Township 11½ is a tract of land.[8] Its length (east to west) is slightly more than six miles. Its average width (north to south) is slightly more than a quarter of a mile. It consists of six sections (31, 32, 33, 34, 35 and 36) and has a total area of 1,007.23 acres. It was not surveyed until 1954 [9] and, until surveyed, was not called Township 11½. However, regardless of what it was called, it was at all pertinent times, before as well as after the survey, the property of the United States.

Prior to 1954, there were Government maps which indicated that the north boundary of Township 11 was the south boundary of Township 12. The fact, however, was and is that, in 1954 and at all times prior thereto, the tract of land now called Township 11½ lay between Townships 11 and 12.[10] Government maps could not and did not alter that fact.

### III

■ Appellant contends that the evidence was insufficient to sustain its conviction. There is no merit in this contention. There was substantial evidence that appellant, acting by and through Lamb, its president and duly authorized agent, committed each of the offenses charged in the indictment.

■ The verdict finding appellant guilty on each count of the indictment was inconsistent with the verdict finding Lamb not guilty on each count. Appellant therefore contends that Lamb's acquittal showed that the evidence was insufficient to sustain appellant's conviction. There is no merit in this contention.[11] Consistency in verdicts is not required.[12]

■ Appellant contends that the evidence was insufficient in that it failed to show that appellant had any criminal intent. There is no merit in this contention. There was substantial evidence that Lamb, appellant's president and duly authorized agent, acting for and on behalf of appellant, stole and converted to appellant's use the property mentioned in count I of the indictment, depredated the property mentioned in count II [13] and

8. Township 11½ lies between Townships 11 and 12. Thus the north boundary of Township 11 is the south boundary of Township 11½, and the south boundary of Township 12 is the north boundary of Township 11½.

9. The 1954 survey was not approved until March 30, 1956.

10. See footnote 8.

11. See United States v. Dotterweich, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48; United States v. General Motors Corp., 7 Cir., 121 F.2d 376; American Medical Ass'n v. United States, 76 U.S.App.D.C. 70, 130 F.2d 233; Southern Advance Bag & Paper Co. v. United States, 5 Cir., 133 F.2d 449.

12. See cases cited in footnote 11. See also Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356: Borum v. United States, 284 U.S. 596, 52 S.Ct. 205, 76 L.Ed. 513; Morrissey v. United States, 9 Cir., 67 F.2d 267; Macklin v. United States, 9 Cir., 79 F.2d 756; Maugeri v. United States, 9 Cir., 80 F. 2d 199; Long v. United States, 9 Cir., 90 F.2d 482; Suetter v. United States, 9 Cir., 140 F.2d 103; Audett v. Johnston, 9 Cir., 142 F.2d 739; McElheny v.

United States, 9 Cir., 146 F.2d 932; Stein v. United States, 9 Cir., 153 F.2d 737; Robinson v. United States, 9 Cir., 175 F.2d 4; Catrino v. United States, 9 Cir., 176 F.2d 884; Bridgman v. United States, 9 Cir., 183 F.2d 750; Allen v. United States, 9 Cir., 186 F.2d 439; Thomas v. United States, 9 Cir., 227 F.2d 667; Bryson v. United States, 9 Cir., 238 F. 2d 657.

13. The depredation shown by the evidence consisted of many acts, including the following: Entering upon and occupying the property without the consent of the United States; constructing and using roads on the property; operating motor trucks, tractors, bulldozers, donkey engines and other machinery thereon; conducting logging operations thereon; cutting and felling many thousands of trees growing and standing thereon; making saw logs from such trees; removing some of the logs from the property; leaving others to rot on the ground; covering much of the property with tree tops, branches and other waste material; failing to remove such material from the property; thereby creating a fire hazard and making it difficult to reseed the property; and, by these and other acts, great-

did these things willfully, knowingly and with criminal intent. That criminal intent, if such existed, was imputable to appellant.[14]

■ There was substantial evidence that appellant, acting by and through Lamb, stole and knowingly converted to its use the logs described in count I of the indictment; that the logs were the property of the United States; and that their value exceeded the sum of $100. Appellant, however, contends that the logs were real property and, since real property cannot be the subject of larceny, contends that the evidence was insufficient to show a violation of 18 U.S.C.A. § 641. There is no merit in these contentions. The evidence showed that the logs were made from trees after the trees were cut and felled; that the cutting and felling of the trees, the making of the logs and the theft and conversion thereof were distinct, separate and independent acts; and that therefore the logs were personal property.[15]

Appellant contends that the evidence, if it showed any violation by appellant, showed only a violation of 18 U.S.C.A. § 1852 [16] or 18 U.S.C.A. § 1853.[17] There is no merit in this contention. As indicated above, there was substantial evidence that appellant, acting, by and through Lamb, violated 18 U.S.C.A. § 641 by stealing and knowingly converting to appellant's use the property mentioned in count I of the indictment and violated 18 U.S.C.A. § 1361 by depredating the property mentioned in count II. Neither § 1852 nor § 1853 says anything about stealing, converting or depredating property. Some of the acts constituting the depredation shown by the evidence [18] are mentioned in § 1852, but others are not. There was no evidence that appellant did any of the acts mentioned in § 1853.[19] In short, neither § 1852 nor § 1853 has anything to do with this case.

Other contentions of appellant are so obviously lacking in merit as not to require discussion.

Judgment affirmed.

ly damaging the property and greatly diminishing its value.

14. C.I.T. Corp. v. United States, 9 Cir., 150 F.2d 85; Mininsohn v. United States, 3 Cir., 101 F.2d 477; Egan v. United States, 8 Cir., 137 F.2d 369; Old Monastery Co. v. United States, 4 Cir., 147 F.2d 905; United States v. George F. Fish, Inc., 2 Cir., 154 F.2d 798. See also United States v. New York Central & Hudson River Railroad Co., 212 U.S. 481, 29 S.Ct. 304, 53 L.Ed. 613; United States v. Union Supply Co., 215 U.S. 50, 30 S.Ct. 15, 54 L.Ed. 87; United States v. Illinois Central Railroad Co., 303 U.S. 239, 58 S.Ct. 533, 82 L.Ed. 773.

15. See 52 C.J.S. Larceny § 3, pp. 792–794.

16. Section 1852 provides:
"Whoever cuts, or wantonly destroys any timber growing on the public lands of the United States; or
"Whoever removes any timber from said public lands, with intent to export or to dispose of the same; or
"Whoever, being the owner, master, pilot, operator, or consignee of any vessel, motor vehicle, or aircraft or the owner, director, or agent of any railroad, knowingly transports any timber so cut or removed from said lands, or lumber manufactured therefrom—

"Shall be fined not more than $1,000 or imprisoned not more than one year, or both. * * *"

17. Section 1853 provides: "Whoever unlawfully cuts, or wantonly injures or destroys any tree growing, standing, or being upon any land of the United States which, in pursuance of law, has been reserved or purchased by the United States for any public use, or upon any Indian reservation, or lands belonging to or occupied by any tribe of Indians under the authority of the United States, or any Indian allotment while the title to the same shall be held in trust by the Government, or while the same shall remain inalienable by the allottee without the consent of the United States, shall be fined not more than $1,000 or imprisoned not more than one year, or both."

18. See footnote 13.

19. It will be noted that § 1853 is applicable only to those who unlawfully cut or wantonly injure or destroy trees growing, standing or being upon the lands, reservations and allotments therein specified. There was no evidence that appellant cut, injured or destroyed any such tree.