**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Robert W. LAUNDER,**
**Defendant-Appellant.**

**No. 83–1291.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 15, 1984.

Decided Sept. 25, 1984.

---

Choy, Circuit Judge, dissented and filed opinion.

Bruce R. Heurlin, Rhonda L. Repp, Tucson, Ariz., for plaintiff-appellee.

Francisco Leon, Tucson, Ariz., for defendant-appellant.

Before CHOY, PREGERSON, and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

Appellant Robert W. Launder was convicted of violating 18 U.S.C. § 1856 (1982). That section provides that

[w]hoever, having kindled ... a fire in or near any forest ... upon any lands ... of the United States, ... leaves said fire without totally extinguishing the same, or permits or suffers said fire to burn or spread beyond his control, or leaves or suffers said fire to burn unattended, shall be fined not more than $500 or imprisoned not more than six months, or both.

Launder was sentenced by the district court to three years probation and was ordered to perform 400 hours of community service at Coronado National Forest. Because the district court incorrectly held that criminal intent is not a necessary element of an offense under 18 U.S.C. § 1856, we reverse.

The facts in this appeal are not disputed. Launder and two friends traveled from Tucson, Arizona, to Mount Lemmon, a recreational area in the nearby Coronado National Forest. They camped overnight in the Spencer Canyon Campground.

The next day, at approximately 1:00 p.m., Launder decided to hike around the campground area. Unable to persuade either of his friends to accompany him, he left his campsite intending to hike for one or two hours prior to returning to the campground. He took no food, water, or camping gear with him.

Launder soon found himself in a very rough area with which he was unfamiliar. He lost track of time and distance. At approximately 6:00 p.m. he realized that he was unable to find his way back to either his campsite or Tucson. In order to attract attention, he decided to light a signal fire. He cleared an area on a rock ledge approximately five to ten feet across and, using small twigs, leaves and grass as fuel, lit a signal fire.

The risk of fire danger in the Coronado National Forest was significant on the day in question. Notices of this hazardous fire condition had been posted on the highway at the base of Mount Lemmon. However, the Forest Service had not taken the step of prohibiting campers from lighting camp-fires, although it may do so when there is a high fire hazard.

Shortly after Launder lit his signal fire, a gust of wind spread the fire and ignited four smaller fires in the area around him. He attempted to extinguish these smaller fires but was unable to do so and the fire escaped his control. The fire spread quickly and became a wild fire which came rapidly toward him. In an effort to avoid personal injury, he ran from the fire northward along a ridge, approximately 1,000 yards.

Approximately twenty minutes later, Launder saw a helicopter circling the fire below. He attempted to attract the attention of the helicopter's occupants by waving his shirt and arms. When this failed, he cleared an area and ignited a second fire. He was sighted by the helicopter crew and the helicopter landed nearby to rescue him. Upon rescue he readily admitted to the helicopter operators and later to the fire suppression specialist of the United States Forest Service that he had set the first fire as a signal fire when he became lost.

The United States filed an information charging Launder with violating 18 U.S.C. § 1856 (1982); the information related to the first fire only. Launder elected to proceed to trial before the United States District Court. He argued at the beginning of the trial that the evidence would show that he had no criminal intent in leaving the first fire and that he did everything possible to extinguish it. The United States argued that the statute did not require proof of criminal intent.

After requesting and considering trial briefs on the issue of whether criminal intent is an element of the offense under 18 U.S.C. § 1856, the district court ultimately entered a verdict of guilty. The district court agreed with the United States that the offense set forth in 18 U.S.C. § 1856 is a regulatory offense which does not, under *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), require a showing of criminal intent. We review the district court's statutory interpretation *de*

*novo. United States v. Mehrmanesh,* 689 F.2d 822, 827 (9th Cir.1982).

As the Supreme Court stated in *Morissette v. United States,* 342 U.S. at 250, 72 S.Ct. at 243, "[t]he contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil." The *Morissette* court made clear that strict liability crimes are an exception in our legal system and are restricted to crimes which can be termed "public welfare offenses," i.e., statutes whose purpose is regulation of "industries, trades, properties or activities that affect public health, safety or welfare." *Id.* at 254, 72 S.Ct. at 245. But the *Morissette* court further emphasized that courts should be most reluctant when interpreting statutes to dispense with a *mens rea* requirement absent a clear legislative intention to do so:

> The spirit of the doctrine which denies to the federal judiciary power to create crimes forthrightly admonishes that we should not enlarge the reach of enacted crimes by constituting them from anything less than the incriminating components contemplated by the words used in the statute.

*Id.* at 263, 72 S.Ct. at 249 (footnote omitted).

■ The language of 18 U.S.C. § 1856 in no way suggests that Congress intended to impose strict criminal liability. It is significant that in section 1856 Congress did not choose to make the act of lighting a fire in United States forest land *per se* illegal. Rather, in that statute Congress chose to impose liability when an individual *"permits* or *suffers* said fire to burn or spread beyond his control ..." (emphasis supplied). That is not the language of strict liability. The legal terms "permitting" and "suffering" clearly require a willful act or a willful failure to act in the face of a clear opportunity to do so.[1] *Black's Law Dictionary* (5th ed. 1979) defines "permit" as follows: "To suffer, allow, consent, let; to give leave or license; to acquiesce, by failure to prevent, or to expressly assent or agree to the doing of an act." *Id.* at 1026. "Suffer" is defined by *Black's Law Dictionary* as follows: "To allow, to admit, or to permit. It includes knowledge of what is to be done under sufferance. To suffer an act to be done or a condition to exist is to permit or consent to it; to approve of it, and not hinder it. *It implies knowledge, a willingness of the time and responsible control or ability to prevent." Id.* at 1284 (citations omitted; emphasis added).

■ The Court in *Morissette* specifically cautioned that

> where Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed.

342 U.S. at 263, 72 S.Ct. at 249. In including the terms "permits" and "suffers" in section 1856 Congress evidenced its intention that a defendant not be found culpable under the statute unless the government has shown a willingness on his part to allow the fire to burn beyond control, or at the least that he failed to make all reasonable efforts to extinguish the fire. Moreover, we think the use of the terms "permits" and "suffers" illustrates the general intent of Congress with respect to the entire statute and that Congress intended that a showing of criminal intent be re-

1. We note that although the prohibition is against permitting or suffering the fire to spread and not against the setting of the fire, we do not hold that the requisite intent may never be found in the act of setting the fire. In cases where it is clear that the mere igniting of the fire will, without more, result in the prohibited act, it may well be that intent can be established from that act alone.

quired regardless of which clause of the statute is invoked in a particular case.[2]

The government argues that section 1856 is a regulatory offense and therefore there is no criminal intent requirement under the statute. While there is no doubt after *Morissette* that under certain circumstances a criminal statute need not contain a *mens rea* requirement, the passages from *Morissette* quoted above make it clear that strict liability criminal statutes remain the exception in our criminal law system, not the rule. Moreover, the *Morissette* holding in no way alters accepted modes of statutory construction to be applied in determining the standard of liability which Congress intends. In fact, the *Morissette* court specifically warned that courts should construe statutes so as to impose strict criminal liability only when Congress clearly expresses its intent that such a standard prevail:

> Consequences of a general abolition of intent as an ingredient of serious crimes have aroused the concern of responsible and disinterested students of penology. Of course, they would not justify judicial disregard of a clear command to that effect from Congress, *but they do admonish us to caution in assuming that Congress, without clear expression, intends in any instance to do so.*

*Id.* at 254 n. 14, 72 S.Ct. at 245 n. 14 (emphasis added).

We note that the statute under which Launder is charged is not one which makes the mere act of igniting a fire on United States forest property illegal and that there are other sections of Title 18 of the United States Code that do impose *per se* liability for intentional acts of setting fires on United States forest land. For example, the section that immediately precedes the one

appellant was accused of violating, section 1855, provides that

> [w]hoever, willfully and without authority, sets on fire any timber, underbrush, or grass or inflammable material upon the public domain or upon any lands owned or leased by or under the partial, concurrent, or exclusive jurisdiction of the United States ... shall be fined not more than $5,000 or imprisoned not more than five years, or both.

18 U.S.C. § 1855 (1982). Under section 1855 it appears not to matter if a fire gets out of control or if the defendant allows the fire to get out of control—it is sufficient that the defendant wilfully started the fire. That is not, however, the statute under which Launder was charged in this action.[3] As the government stated clearly at oral argument "[t]he government admits that appellant did not violate any law by starting this fire." An additional act was required, an act that the language of the statute clearly indicates must be willing, voluntary or intentional.

We conclude that section 1856 does not dispense with the customary requirement that criminal intent be established. Here, the government does not claim that Launder *willingly* left the fire without extinguishing it, that he had the ability or power to prevent the fire from spreading beyond his control, or that he in any way had the requisite criminal intent under 18 U.S.C. § 1856. Launder was lost and tired and lit a signal fire as a last resort out of grave concern over his safety. When the fire began to escape his control, Launder vigorously tried to combat it. Launder immediately confessed his responsibility to both the rescue team and the United States Forest Service. Launder even helped the authorities put out the second signal fire.

---

**2.** For example, the term "leaves" as used in other clauses in the statute connotes a voluntary leaving by the defendant and does not embrace an involuntary departure compelled by events over which the defendant has no control.

**3.** In its original complaint, the government alleged that Launder violated both 18 U.S.C. § 1855 and 18 U.S.C. § 1856. In the later information filed by the government the count based

on section 1855 was dropped. At oral argument the government stated that it dropped the count because it decided to proceed on a misdemeanor rather than a felony charge. However, the government also said that under § 1855 criminal intent is required and that it feared the facts here would not support a conviction under that section for that reason.

Such activities do not lend themselves to the view that Launder engaged in the willful act of leaving a fire without extinguishing it or "permit[ted] or suffer[ed] [a] fire to burn or spread beyond his control."

We readily acknowledge that protecting forests from fires which every year ravish invaluable acres of forest lands in the United States is a legitimate concern. However, the United States Forest Service has the authority to prohibit, by order, all fires in a given area whenever circumstances warrant such action. 36 C.F.R. § 261.52 (1983). The government conceded at trial that the Forest Service had not exercised its authority to prohibit the kindling of all fires in the Mount Lemmon recreation area on the day in question, and that Launder's action in starting the signal fire did not constitute a crime.

Because the government has not sought to prove that Launder committed a violation of 18 U.S.C. § 1856, as that statute must be construed, we reverse his conviction.

REVERSED.

CHOY, Circuit Judge, dissenting.

The majority today wrongly infers a criminal intent requirement into 18 U.S.C. § 1856 by requiring the government to show a willingness on the defendant's part to allow the fire to burn beyond control or a failure to make all reasonable efforts to extinguish the fire. Because Congress clearly expressed its intent to impose strict liability on one who "permits" or "suffers" a fire to spread, regardless of the defendant's willingness to permit the fire's spread or reasonable efforts to prevent it from spreading, I respectfully dissent.

Legislative intent controls whether a criminal statute requires proof of criminal intent. *United States v. Bailey*, 444 U.S. 394, 406, 100 S.Ct. 624, 632, 62 L.Ed.2d 575

(1980); *United States v. Balint*, 258 U.S. 250, 252, 42 S.Ct. 301, 302, 66 L.Ed. 604 (1922). Courts will sometimes infer that Congress did not intend to dispense with the criminal intent requirement even though the statute does not include specific language of intent. *See Morissette v. United States*, 342 U.S. 246, 262, 72 S.Ct. 240, 249, 96 L.Ed. 288 (1952). But when the government exercises its police power to enact a regulatory statute for social betterment, courts will infer that the legislature intended to dispense with the intent requirement. *Morissette v. United States*, 342 U.S. at 258–59, 72 S.Ct. at 247–48 (citing *United States v. Balint*, 258 U.S. at 252, 42 S.Ct. at 302). In particular,

> [W]here a federal criminal statute omits mention of intent and where it seems to involve what is basically a matter of policy, where the standard imposed is, under the circumstances, reasonable and adherence thereto properly expected of a person, where the penalty is relatively small, where conviction does not gravely besmirch, where the statutory crime is not one taken over from the common law, and where congressional purpose is supporting, the statute can be construed as one not requiring criminal intent.

*United States v. Freed*, 401 U.S. 601, 613 n. 4, 91 S.Ct. 1112, 1120 n. 4, 28 L.Ed.2d 356 (1971) (quoting *Holdridge v. United States*, 282 F.2d 302, 310 (8th Cir.1960)); *see also Morissette v. United States*, 342 U.S. at 256, 72 S.Ct. at 246; W. LaFave & A. Scott, *Criminal Law* § 31 at 219–20 (1972).

In determining the legislative intent of section 1856, the majority failed to compare the language Congress used in this section with language used in surrounding sections. Section 1856 does not contain any language clearly evidencing congressional intent to impose a criminal intent requirement.[1] The sections surrounding section

---

1. The majority argues that the terms "permits" and "suffers" "clearly require a willful act or a willful failure to act in the face of a clear opportunity to do so." The majority, however, reads too much into Congress' use of "permits" or "suffers." Those terms may reasonably be

construed as describing the act of lighting a fire and failing to prevent it, even unwillingly, from burning or spreading out of control, with knowledge of the possible danger. Accordingly, in another context, we have interpreted "permit" or "suffer" to mean "with knowledge." *Forres-*

1856, however, contain specific language of criminal intent, such as the words "intent," "wantonly," and "willfully." *See* 18 U.S.C. §§ 1851–53, 1855, 1858. Congress would have included similar language in section 1856 had it intended to require proof of willful conduct. The absence of such language indicates that Congress did not intend to include criminal intent as an element of a section 1856 violation. *See United States v. Gray*, 448 F.2d 164, 168 (9th Cir.1971) (where Congress employs a term in one place and excludes it in another, court should not imply it where excluded), *cert. denied*, 405 U.S. 926, 92 S.Ct. 974, 30 L.Ed.2d 798 (1972); *Pena-Cabanillas v. United States*, 394 F.2d 785, 789–90 (9th Cir.1968) (court found no intent requirement because the relevant section omitted language of intent, and related sections contained such language); *Commonwealth v. Koczwara*, 397 Pa. 575, 155 A.2d 825, 829 (1959), *cert. denied*, 363 U.S. 848, 80 S.Ct. 1624, 4 L.Ed.2d 1731 (1960) (same); *see also United States v. Lamb*, 150 F.Supp. 310, 313 (N.D.Cal.1957) (first clause of related section 1852 requires no proof of criminal intent because it contains no specific language of intent), *aff'd sub nom., Magnolia Motor & Logging Co. v. United States*, 264 F.2d 950 (9th Cir.), *cert. denied*, 361 U.S. 815, 80 S.Ct. 54, 4 L.Ed.2d 61 (1959).

Congress may omit the intent requirement in a regulatory statute for social betterment. *Morissette v. United States*, 342 U.S. at 258–59, 72 S.Ct. at 247–48. I conclude that Congress intentionally omitted specific language of intent from section 1856 for social betterment. Congress enacted the predecessor to section 1856 as a regulatory measure, to further the public welfare by protecting forests.[2] The legislature stated:

> In the judgment of the committee, a strict enforcement of the penal statutes contained in said bill by the United States Courts will annually save millions of feet of lumber and to a great extent preserve the forests upon the public domain.

H.R.Rep. No. 1976, 54th Cong., 1st Sess. 1897.[3] The Supreme Court acknowledged this predecessor statute's purpose "to prevent forest fires which have been one of the great economic misfortunes of the country." *United States v. Alford*, 274 U.S. 264, 267, 47 S.Ct. 597, 598, 71 L.Ed. 1040 (1927).[4]

Congress enacted section 1856 for the same purpose. Forest fires continue to be one of this country's great misfortunes, the prevention of which is still, as it was in 1927, in the public welfare. Because Congress enacted section 1856 for social betterment, I would not infer an intent require-

ter v. Roth's I.G.A. Foodliner, Inc., 646 F.2d 413, 414 (9th Cir.1981).

"Permitting" or "suffering" a fire to burn beyond control, therefore, is not necessarily the same as willfully permitting it to burn beyond control. Given the strong policy reasons for finding strict criminal liability here, we should not infer from Congress' use of "permit" or "suffer" that it was imposing a criminal intent requirement.

If the government does not prove a willful failure to act, the majority would excuse the defendant unless the government shows that he failed to take all reasonable steps to prevent the fire from spreading. I find nothing in the statute or in the authorities cited by the majority which supports this statement.

**2.** Section 1856 was originally part of an act entitled "An Act To prevent forest fires on the public domain." That Act, in part, stated:

> That any person who shall build a campfire, or other fire, in or near any forest, timber, or

other inflammable material upon the public domain, shall, before breaking camp or leaving said fire, totally extinguish the same. Any person failing to do so shall be deemed guilty of a misdemeanor, and, upon conviction thereof in any district court of the United States having jurisdiction of the same, shall be fined in a sum not more than one thousand dollars or be imprisoned for a term of not more than one year, or both.

Ch. 313, § 2, 29 Stat. 594 (1897).

**3.** The defendant incorrectly argues that the legislative history's reference to "penal statutes" suggests that the statute's purpose was to punish rather than to regulate forests for the public welfare. All criminal statutes, whether regulatory or otherwise, carry penalties and, in that sense, are penal statutes.

**4.** *Alford* involved an amended version of the original statute passed in 1897. *See* 274 U.S. at 266–67, 47 S.Ct. at 598.

ment, just as courts in other contexts have refused to infer such a requirement into other statutes designed to protect forests. *See Shevlin-Carpenter Co. v. Minnesota,* 218 U.S. 57, 69–70, 30 S.Ct. 663, 666–667, 54 L.Ed. 930 (1910); *United States v. Wilson,* 438 F.2d 525, 525–26 (9th Cir.1971) (per curiam).

Consideration of the other *Holdridge* factors also supports my position that we should not infer a criminal intent requirement into section 1856. The punishment for violating section 1856 is not severe. It cannot exceed six months imprisonment, a fine of $500, or both. Moreover, a violation of section 1856 may result in the spread of forest fires, a serious consequence. Further, potential violators of section 1856 are capable of taking reasonable steps to prevent the spreading of fires. Finally, no common law crime, similar to a section 1856 offense, requires a showing of criminal intent.[5]

The majority does not consider these points but cites only general rules to support its position that section 1856 is not a "public welfare" statute. They argue that "strict liability criminal statutes remain the exception in our criminal system, not the rule," and that "the *Morissette* holding in no way alters accepted modes of statutory construction to be applied in determining the standard of liability which Congress contends." Such generalities, however, cannot override the clear expressions of congressional intent in this case to enact section 1856 as a regulatory statute for the preservation of forests.

We should, therefore, affirm the district court's conviction because the evidence showed that Launder committed the act of kindling a fire in or near a forest upon government lands, and permitted the fire to burn beyond his control. Launder had the ability to prevent the fire from spreading or to avoid the necessity of lighting a fire. Launder, therefore, permitted the

fire to burn beyond his control in violation of section 1856.

Although I realize the difficult situation in which Launder found himself, and the lack of serious culpability here, these considerations should not alter our decision in this case. When Congress decides to impose strict liability, it has concluded that all those who engage in the prohibited behavior, even those without criminal intent, must be convicted to further the public welfare. Once Congress has made this decision, we are bound to follow it.

---

**5.** In this respect, this case is distinguishable from *Morissette,* where the Supreme Court inferred a criminal intent requirement into the statutory crime of embezzling, stealing or converting, where there was "an unbroken course

of judicial decision in all constituent states of the Union holding intent inherent in this class of offense, even when not expressed in a statute." 342 U.S. at 261–62, 72 S.Ct. at 248–49.