990 F.2d 1261
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
AEROLITE CHROME CORPORATION, Defendant-Appellant.
 No. 91-10404.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 9, 1993.*
Decided March 22, 1993.
 
 Before GOODWIN, NOONAN and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Defendant Aerolite Chrome Corporation (Aerolite Chrome) appeals its conviction on 11 counts of knowingly discharging pollutants in violation of pretreatment standards. Aerolite Chrome claims that its motion of acquittal should have been granted when its sole corporate agent was acquitted of the same conduct. Aerolite Chrome also contends that its motion to suppress should have been granted because of deficiencies in the search warrant and accompanying affidavit. We affirm the conviction.
 
 FACTS
 
 3
 Arthur Thomas was the majority shareholder and sole officer of Aerolite Chrome Corporation. Aerolite Chrome entered into a partnership with Rich Romero, Armen Thomassian and Matthew Thomas to form Aerolite Plating Company (the partnership), which was in the business of plating steel parts with various metal coatings. There has been no dispute that Aerolite Chrome is responsible for the acts of Aerolite Plating Company.
 
 
 4
 In 1986 the partnership was issued a zero discharge permit by the City of Reno which allowed discharge of only domestic use water into the sewer system. The permit was issued after the partnership and the City reached an agreement requiring the partnership to install a deionization unit, which would allow recycling of the rinse water, and seal the drains located in the plant floor.
 
 
 5
 In 1987 the City received reports of unlawful sewer discharges by Aerolite Plating. The City installed a manhole outside of the Aerolite Plating facilities and set up equipment to monitor the pH level and metallic content of the discharges from the Company. Based upon sewer samples revealing discharges with unlawful pH levels and metallic content,
 
 
 6
 Upon executing the warrant on February 24, 1988, Dobyns found Aerolite Plating employees Tony Zulim and Arturo Moreno in the plant. A discolored liquid was being pumped from the plant floor to a toilet in a nearby bathroom. The sink faucets in that bathroom were turned all the way on. Zulim claimed that the rinse water was being pumped off in response to a one-time emergency.
 
 PROCEEDINGS
 
 7
 Based on the elevated sewer discharges which occurred during the surveillance period prior to the search warrant being executed, Aerolite Chrome and Arthur Thomas were indicted on eleven counts of Discharge of Pollutants in Violation of Pretreatment Standards, 33 U.S.C. §§ 1317(d) and 1319(c)(2)(a). Aerolite Chrome and Arthur Thomas moved to suppress the evidence obtained during and as a result of the search warrant on the grounds that the warrant was overly broad and anticipatory and based upon intentionally false statements. The motion was denied by the district court.
 
 
 8
 After a six-day trial, the jury acquitted Arthur Thomas of all eleven counts and convicted Aerolite Chrome of the same counts. The district court denied Aerolite Chrome's motion of acquittal. Aerolite Chrome was sentenced to five years of unsupervised probation and a $55,000 fine. A timely notice of appeal was filed by Aerolite Chrome.
 
 ANALYSIS
 A. Corporate Conviction v. Agent Acquittal
 
 9
 It is well-settled law that a corporation can act only through its officers and agents. See Wells Fargo & Co. v. Wells Fargo Express Co., 556 F.2d 406, 419 (9th Cir.1977). From this maxim, Aerolite Chrome argues that it cannot be held criminally liable where its only officer and agent was acquitted of the identical charges. The district court denied Aerolite Chrome's motion of acquittal which was based on this argument. The standard for reviewing a court's denial of a motion for acquittal is whether the evidence, considered in the light most favorable to the government, is sufficient to allow any rational trier of fact to find guilt beyond a reasonable doubt. United States v. Brown, 912 F.2d 1040, 1042 (9th Cir.1990).
 
 
 10
 In arguing the necessity for reversal of its inconsistent verdict, Aerolite Chrome analogizes to conspiracy law. The rule requiring consistency in conspiracy verdicts was recognized in the Ninth Circuit in Lubin v. United States, 313 F.2d 419 (9th Cir.1963). Recognizing that conspiracy requires at least two people, Lubin and its progeny required a conviction to be reversed where all of the co-conspirators were acquitted. In United States v. Powell, 469 U.S. 57, 65 (1987), the Supreme Court disagreed with the premise of the rule requiring consistency, instead finding that an inconsistent verdict could be the result of "mistake, compromise, or lenity." Because an inconsistent verdict may as easily be a wrong against the government, it should no longer be a ground for reversal. Id. at 66.
 
 
 11
 In United States v. Valles-Valencia, 823 F.2d 381, 382 (9th Cir.1987), the Ninth Circuit recognized that the Powell decision snuffed the life out of Lubin. The reasoning in Powell does not support a distinction for cases in which the indictment alleged the existence of unknown and unindicted co-conspirators; an inconsistent verdict is allowed to stand not because the convicted party may be guilty of committing the crime with an uncharged individual, but because an indicted individual may have been acquitted though the jury actually thought him guilty. After Powell and Valles-Valencia, there no longer is a rule requiring consistency of verdicts.
 
 
 12
 Because the rule of consistency has been overruled, a corporation may be convicted of the same crime of which its only agent has been acquitted. Consistency is not required between verdicts of a corporation and the agent whose conduct established the corporation's liability. Magnolia Motor & Logging v. United States, 264 F.2d 950, 953 (9th Cir.), cert. denied, 361 U.S. 815 (1959). Under Valles-Valencia the only question is whether the corporation's conviction is supported by a sufficiency of the evidence. 823 F.2d at 382. There was plenty of testimony in this case evidencing Aerolite Chrome's involvement, through Arthur Thomas, in the illegal discharge of pollutants. Among other things, Zulim testified that Thomas approved of his pumping off the rinse water and occasionally requested that he do so, Zulim recounted a conversation where Thomas asked him to stick with his story that the pumping occurred only once and in response to an emergency, and other employees testified to Thomas's presence in the plant when the rinse water was being pumped. Considered in the light most favorable to the government, this evidence was sufficient to convict Aerolite Chrome of knowingly discharging pollutants.
 
 B. Motion to Suppress
 
 13
 Aerolite Chrome's motion to suppress was based on the claim that the search warrant was overly broad in its description of the items which could be seized, was overly anticipatory in that it abdicated the decision on one element of probable cause to law enforcement officers, and that the accompanying affidavit was partially based upon mere rumor. A decision on a motion to suppress is subject to de novo review. United States v. Homick, 964 F.2d 899, 902 (9th Cir.1992).
 
 1. Overbreadth
 
 14
 Paragraph 7 of the search warrant allowed the removal of all "[o]ther device(s) or systems which may be used to eliminate said materials into the City storm drain or sewer system." Paragraph 8 allowed authorities to seize all documents and records which contain evidence of the discharge of pollutants into the sewer or storm drain system. Aerolite Chrome did not challenge the specificity of paragraph 7 below so the district court did not address that paragraph. Accordingly, Aerolite Chrome waived any objection it had to paragraph 7. Fed.R.Crim.P. 12(b)(3); United States v. Mulder, 889 F.2d 239, 240 (9th Cir.1989).
 
 
 15
 There are three factors to be considered in determining whether the items authorized for seizure in a search warrant are described with sufficient particularity:
 
 
 16
 (1) whether probable cause exists to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued.
 
 
 17
 United States v. Spilotro, 800 F.2d 959, 963 (9th Cir.1986) (citations omitted). "Reference to a specific illegal activity can, in appropriate cases, provide substantive guidance for the officer's exercise of discretion in executing the warrant." Id. at 964. The warrant in this case was sufficiently specific because it referred to the particular illegal activity which the seized documents must evidence. See United States v. Hernandez-Escarsega, 886 F.2d 1560, 1567-68 (9th Cir.1989), cert. denied, 497 U.S. 1003 (1990); United States v. Fannin, 817 F.2d 1379, 1383 (9th Cir.1987).
 
 
 18
 Aerolite Chrome claims that the warrant could have more particularly described the items sought due to the government agent's knowledge of the partnership's plant and offices. Aerolite Chrome does not allege what further information should have been included in the warrant or how limited familiarity with the office space gave the agent knowledge of the particular items sought or their location. There is no evidence that the warrant could have been more specific in light of information available to the government at the time the warrant was sought. The district court did not err in finding that the warrant was sufficiently specific as to the items which could be seized.
 
 2. Anticipatory and Prospective
 
 19
 Aerolite Chrome also claims that the warrant was unlawfully anticipatory and prospective in nature. The warrant did not make execution of the warrant contingent upon a particular event, such as a controlled delivery of narcotics. After receiving the first warrant, however, officers chose not to execute it because they were not at the scene when waste water with an unlawfully low pH level was discharged from Aerolite Plating. The officers instead chose to obtain a second warrant and wait until another unlawful discharge occurred. The warrant was executed the next day after a discharge with a low pH level.
 
 
 20
 In reviewing a search warrant, the court must find that the issuing judge had a "substantial basis" for finding probable cause. United States v. Weber, 923 F.2d 1338, 1343 (9th Cir.1990). The past discharges of illegal pollutants gave the Justice of the Peace probable cause to believe that equipment necessary for such a discharge would be on the premises. This case is unlike those where the presence of contraband on the scene is essential for the issuance of a search warrant. See United States v. Weber, 923 F.2d 1338, 1343 (9th Cir.1990); United States v. Hale, 784 F.2d 1465, 1468 (9th Cir.), cert. denied, 479 U.S. 829 (1986). The fact that officers awaited an actual discharge before executing the warrant does nothing to make the warrant prospective when issued. Furthermore, the event upon which the officers chose to execute the warrant was within the control of Aerolite Chrome and was not manipulated by the government. This case does not invoke the kind of speculation which the court found objectionable in United States v. Hendricks, 743 F.2d 653, 654-55 (9th Cir.1984), cert. denied, 470 U.S. 1006 (1985). The warrant was not unduly prospective.
 
 3. False Statements
 
 21
 Finally, Aerolite Chrome argues that the affidavit of Dennis Dobyns submitted in application of the search warrant contained statements which were intentionally false or made in careless disregard of the truth. Aerolite Chrome presents no evidence that Dobyn intentionally made any false statement. The claim is based upon paragraphs 16 and 25 of the affidavit, which relate rumors and information obtained from unknown sources about how the partnership was disposing of rinse water. The inclusion of rumors and unverified information from unknown sources in an affidavit in support of an application for a search warrant is improper:
 
 
 22
 Although an affidavit may be based upon hearsay information and need not reflect the direct personal observations of the affiant, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant ... was 'credible' or his information 'reliable.'
 
 
 23
 Aguilar v. Texas, 378 U.S. 108, 114 (1964). The rumors which are contained in this affidavit arguably were corroborated by personal observations of the affiant recounted in paragraphs 22 and 25 of the affidavit. Even if inclusion of the rumors and information from unknowm sources was improper, however, Aerolite Chrome has not satisfied its burden of proving that "the challenged statement was essential to the finding of probable cause." United States v. Dozier, 844 F.2d 701, 705 (9th Cir.1988) (citing Franks v. Delaware, 438 U.S. 154, 171-72 (1978)), cert. denied, 488 U.S. 927 (1988). There is sufficient other information contained in the affidavit, including the results of the samples taken from the Aerolite Plating sewer discharges over a month of surveillance, to sustain a finding of probable cause.
 
 
 24
 The judgment of conviction is AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Fed.R.App.P. 34(a) and Ninth Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3